LUCIUS B. HUTCHINSON, Respondent, *v.* THE PRESIDENT AND
DIRECTORS OF THE MANHATTAN COMPANY, Impleaded, etc.,
Appellant.

BANKING — COLLECTION OF DRAFT DEPOSITED WITH UNRESTRICTED
INDORSEMENT — TITLE TO, AND APPLICATION OF, PROCEEDS. If the
owner of a negotiable draft, payable out of the state to his order, indorses
it generally to another, with an oral instruction to deposit it for collec-
tion, and the indorsee thereupon indorses the draft for deposit to his
own credit, and deposits it, without limitation or further instructions, with
a bank of which he is a customer, and the bank, merely because the draft
is payable out of the state, makes a " short " entry thereof in the cus-
tomer's pass book, and on the same day forwards the draft by mail for
collection, and on the next day makes a loan to the customer on his
demand note, under a written agreement giving the bank a lien upon all
his property and securities in its possession, and authorizing it to apply
on all his existing or future obligations all moneys belonging to him in
the hands of the bank on deposit or otherwise, and on that day the draft
is collected by the collecting agent of the bank, and on the same day the
customer makes a general assignment — the bank is entitled, where no
question of good faith exists, to apply the proceeds of the draft, on
receipt thereof from its agent in due course of business, upon the cus-
tomer's note, as well against the person who indorsed the draft to the
customer as against the customer and his assignee, in the absence of any
notification of a claim of ownership to the draft or its proceeds, or of any
demand therefor, from such indorser, prior to the collection of the draft
by the bank's collecting agent.

*Hutchinson* v. *Manhattan Co.*, 9 Misc. Rep. 343, reversed.

(Argued June 3, 1896; decided October 6, 1896.)

APPEAL from judgment of the General Term of the
Superior Court of the city of New York, entered upon an
order made the first Monday of June, 1894, which affirmed
a judgment in favor of plaintiff entered upon the report of
a referee.

This action was brought to recover the proceeds of a draft
collected by the defendant banking corporation and alleged
to be the property of the plaintiff.

The facts, so far as material, are stated in the opinion.

*Charles E. Rushmore* for appellant. The title to the
check and to the proceeds thereof passed to the Manhattan

Company, and it was entitled to apply the same to the indebt-edness of W. L. Patton & Co. to it. (*M. Nat. Bank of W. v. Hall*, 83 N. Y. 345; *Hatch* v. *F. Nat. Bank*, 147 N. Y. 184; *C. Ex. Bank* v. *F. Nat. Bank*, 118 N. Y. 443; *Castle v. C. Ex. Bank*, 148 N. Y. 122; *Clark* v. *Merchants' Bank*, 2 N. Y. 380; *M. Nat. Bank* v. *Loyd*, 90 N. Y. 530; *Cragie* v. *Hadley*, 99 N. Y. 133; *O'Connor* v. *Mechanics' Bank*, 124 N. Y. 324; *In re W. E. Bank*, L. R. [11 Ch. Div.] 772; *Briggs* v. *C. Nat. Bank*, 89 N. Y. 182.)

*John L. Branch* for respondent.   The plaintiff did not part with his ownership of the draft in indorsing it to Patton & Co. (*Bank of Washington* v. *Triplet*, 1 Pet. 25; *M. C. Bank* v. *A. C. Bank*, 7 N. Y. 462.) The defendant bank received the draft for collection only.   If a bill be deposited for collection only, the bill remains in the depositor and the bank holds it and its proceeds when collected as the agent of the depositor. (*McBride* v. *Farmers' Bank*, 26 N. Y. 450; *Clark* v. *Merchants' Bank*, 2 N. Y. 380; *M. Nat. Bank* v. *Loyd*, 90 N. Y. 530; *Cragie* v. *Hadley*, 99 N. Y. 133; *Nat. B. & D. Bank* v. *Hubbell*, 117 N. Y. 399.) To entitle the defendant to hold the draft in question, the bur-den of proof is upon it to show that it came into possession of it in the usual course of business, in good faith and for a present consideration. (*Scott* v. *Ocean Bank*, 5 Bosw. 192; 23 N. Y. 289; *Moore* v. *Ryder*, 65 N. Y. 438; *McBride* v. *Farmers' Bank*, 26 N. Y. 455; *C. N. Bank* v. *Diefendorf*, 123 N. Y. 206; *Hall* v. *Wilson*, 16 Barb. 548.) A party who receives negotiable securities on a precedent debt without relinquishing any security or right respecting it, is not a *bona fide* holder for value. (*Lawrence* v. *Clark*, 36 N. Y. 128; *Coddington* v. *Bay*, 20 Johns. 637; *Weaver* v. *Barden*, 49 N. Y. 286; *Dickerson* v. *Wason*, 47 N. Y. 442; *McBride* v. *Farmers' Bank*, 26 N. Y. 454; *Nat. Park Bank* v. *Sea-board Bank*, 114 N. Y. 34; *Moore* v. *Ryder*, 65 N. Y. 443; *Spear* v. *Myers*, 6 Barb. 445; *Wardell* v. *Howell*, 9 Wend. 170; *Payne* v. *Cutler*, 13 Wend. 605.) The defendant had

no right to apply the proceeds of the draft under the terms of the note. (*Clark* v. *Merchants' Bank*, 2 N. Y. 383.) In order to entitle the defendant bank to apply the proceeds of the draft, or to withhold it from the plaintiff, it must appear that Patton & Co. converted the money to their own use and paid it in due course of business in discharge of their indebtedness, and that the defendant was entirely ignorant of the nature of their title. (*C. I. Works* v. *A. E. Nat. Bank*, 34 Hun, 26.) If, however, it is held that Patton & Co. became the owners of the check and its proceeds by virtue of the plaintiff's indorsement, it is submitted that the title to the proceeds of the check passed under the general assignment of Patton & Co. for the benefit of creditors and belongs to the assignee. The assignment was made May fifth, and the defendant did not see fit to exercise its option, if any, until May sixth. (*Koehler* v. *Hughes*, 148 N. Y. 510; *Nat. B. & D. Bank* v. *Hubbell*, 117 N. Y. 384.)

BARTLETT, J. In the month of May, 1893, the plaintiff kept a deposit account with the firm of W. L. Patton & Co., bankers and brokers of the city of New York, and Patton & Co. were at the same time depositors with the defendant, The President and Directors of the Manhattan Company, a banking corporation also doing business in the city of New York. On the 4th day of May, 1893, the plaintiff deposited with Patton & Co. a draft drawn by the Interstate Mortgage Trust Co., of Greenfield, Massachusetts, on the Packard National Bank of the same place, dated May 3d, 1893, for $2,400.00, payable to the order of G. H. Kaulback. At the time of this deposit the draft was indorsed as follows: "Pay to the order of L. B. Hutchinson, G. H. Kaulback;" also, "Pay W. L. Patton & Co. or order, L. B. Hutchinson."

On the same day Patton & Co. deposited the draft with the defendant bank, adding this indorsement: "For deposit to the credit of W. L. Patton & Co."

The draft was deposited by Patton & Co. without any instructions other than appears by the indorsement, and it is

not claimed that the bank then had any knowledge of the plaintiff, except as disclosed by his general indorsement of the draft to Patton & Co.

As the draft was payable out of the state, the bank did not credit it to Patton & Co., further than to make a "short" entry in the pass book of the latter, not as the result of any instruction from Patton & Co., but as a voluntary exercise of power on the part of the bank.

The bank, on the same day, May 4th, forwarded the draft to Massachusetts for collection, and on the morning of the 6th of May received the proceeds in New York by mail. In the meantime, however, Patton & Co., on the 5th day of May, 1893, at 3:16 o'clock in the afternoon, being insolvent, made a general assignment for the benefit of their creditors, and filed it in the office of the clerk of the city and county of New York.

The plaintiff, on the 6th day of May, demanded the proceeds of the draft from the bank, resting his claim on the ground that the "short" entry in the pass book of Patton & Co. rendered the bank a holder of the draft for collection only, and that as he had orally instructed Patton & Co. to deposit the draft with the bank for collection, he was in law the owner of it, notwithstanding the fact that Patton & Co. had, in violation of his instructions, made a general deposit of the draft. The courts below have sustained this contention of the plaintiff and given judgment in his favor.

It is admitted that all the parties interested acted in good faith, and that a question of law is presented upon facts practically undisputed.

To properly decide this case it is necessary to ascertain the precise relations existing between the defendant bank and Patton & Co. at the time of this transaction.

For a long time prior to May, 1893, Patton & Co. kept a deposit account with the defendant bank.

On May 6th, 1893, when the defendant bank actually received in the city of New York by mail the proceeds of the draft, the bank held two promissory notes made by Patton &

Co. as follows: One dated April 21st, 1893, to the order of the bank for $50,000 payable on demand after date, without grace. The other dated May 5th, 1893, to the order of the bank payable on demand, after date, without grace for the sum of $297,500.00.

It was admitted on the the trial that the loans represented by these notes were made by the bank and that there was still due a balance on each note aggregating the sum of about $190,000.00 and interest.

The bank received with each of said notes certain collateral securities with power to demand additional security at any time, and it was also given a lien "upon all the property or securities left in their possession," by Patton & Co., "and also upon any balance of the deposit account" of Patton & Co.

The bank was further empowered "at their option, at any time, to appropriate and apply to the payment and extinguishment of any of the above-named obligations or liabilities, whether now existing or hereafter contracted, any and all moneys now or hereafter in their hands on deposit or otherwise to the credit of or belonging to the undersigned, whether the said obligations or liabilities are then due or not due."

It thus appears that the relation existing between the bank and Patton & Co. was something more than the ordinary one of bank and depositor. The defendant bank held the written consent and authority of Patton & Co. to apply on all their existing or future obligations moneys belonging to them which the bank held "on deposit or otherwise."

It also appears that on May 5th, the day the draft was paid to the agent of the defendant bank in Greenfield, Massachusetts, and the day that Patton & Co. late in the afternoon filed their general assignment for the benefit of creditors, the defendant bank made the second of. the two loans already referred to amounting to $297,500.00.

It is fair to assume, the bank at that time having no notice of plaintiff's claim, but on the contrary having every reason to believe the draft was the property of Patton & Co., that it

made the second loan relying in part for collateral security upon the proceeds of the draft if collected.

As between the bank and Patton & Co. and the general assignee of the latter, who is joined as a defendant in this action, the title of the bank is perfect to the draft and its proceeds under the agreements contained in the loan notes, and, as already intimated, for the further reason that, on May 5th, it parted with present value, relying upon the draft and its proceeds as part of its collateral security.

It remains to consider the position occupied by the plaintiff in this transaction.    We start out with the facts admitted or proved that, on the 4th day of May, the plaintiff indorsed the draft generally to Patton & Co.; that Patton & Co. indorsed it for deposit to the bank without limitation or instruction of any kind; that the bank, in the exercise of its power in the premises, postponed the physical act of crediting Patton & Co. with the draft on their pass book other than by "short entry" until actual collection; that on the 6th day of May the bank received by mail the proceeds of the collection and applied them on the second note of $297,500.00; that on the 6th day of May, after the collection was completed, plaintiff made his demand on the bank.

The counsel for the bank requested the referee to find as follows: " At the time of the receipt of the proceeds of said check and the credit of the same to the account of said W. L. Patton & Co., and the application thereof to the indebtedness of W. L. Patton & Co. by this defendant, this defendant had received no notice of the plaintiff's claim of title to said check or the proceeds thereof, nor had any demand for the said check or the proceeds thereof been made by any person upon this defendant at that time."

We think the defendant bank was entitled to have this finding made, as it agreed with plaintiff's testimony to the effect that he made the demand on May 6th, when the collection was completed, and it was also admitted on the record that the proceeds of the collection were applied on the second note May 6th.

If the plaintiff deemed it important to his case to show demand on his part prior to the application of payment, he rested under the burden of proof. The record, as it stands, shows no prior demand.

The various requests to find made by counsel for the defendant bank and the refusals of the referee enable us to look into the record for certain facts not found.

The referee was asked to find that the check in question was paid by the drawee May 5th, 1893, and the proceeds thereof were remitted to the defendant and were received by the defendant on the 6th day of May, 1893, but the referee refused to find except " as in report." This brings us to the decisive point in the case. The rights of the plaintiff and the bank are to be determined by what actually took place and not by book entries which are merely the evidence of transactions already completed. It is to be kept in mind that the defendant bank had no notice of plaintiff's claim until after the collection was completed on the 5th day of May and the arrival of the proceeds in New York on the 6th day of May, 1893. The view we entertain leads us to the conclusion that as matter of law the rights of the parties became fixed on the 5th day of May, 1893. This court has repeatedly held that the general course of business in a community, including the universal practice of banks, is a matter of which it may take judicial notice. (*Merchants' National Bank of Whitehall* v. *Hall*, 83 N. Y. 345; *Agawam Bank* v. *Strever*, 18 N. Y. 512.)

The draft in question, put in evidence by the plaintiff, shows that the defendant bank made it payable to the cashier of the First National Bank of Greenfield, Massachusetts, and it was paid to that bank May 5th.

The plaintiff also put in evidence the cashier's check of the First National Bank of Greenfield on the Importers and Traders' National Bank of New York, dated May 5th, 1893, and payable to the order of the cashier of the defendant bank for the proceeds of the draft of $2,400.00, less two dollars for collection. It was admitted and proved that this check was paid.

We thus have the collection of the draft completed and the proceeds in the hands of the agent of the defendant bank in Greenfield on the 5th day of May.

The court will take judicial notice of the fact that banking hours are from ten o'clock A. M. to three o'clock P. M., and it consequently follows that when Patton & Co. filed their general assignment for the benefit of creditors in the office of the clerk of the city and county of New York at 3:16 o'clock P. M., May 5th, the defendant bank was possessed in law of the proceeds of the draft and was liable to Patton & Co. for the same. This fact, however, is not of controlling importance as it is undisputed the collection was made sometime on the 5th of May, and at the instant it was made the defendant bank became liable to account either to Patton & Co. or their general assignee, and was also entitled ·to hold against either of them the proceeds of the collection under the terms of the agreement contained in the loan notes.

If the First National Bank of Greenfield, which acted as the collecting agent of the defendant bank, had failed on the 5th day of May, 1893, and its check remitting the proceeds of the collection had proved worthless, it needs no argument to show that the loss would have fallen on the defendant bank.

It follows, therefore, that even on plaintiff's theory that the defendant by making a "short" entry in the pass book of Patton & Co. when it received the draft thereby admitted it took it for collection, yet the collection was made and the proceeds were in the hands of the agent of the defendant bank the day before plaintiff gave notice to the bank of his alleged ownership of the draft and its proceeds.

If the defendant bank, in law, received the draft for collection, it was simply as to Patton & Co., and the moment the draft was paid to its agent it could hold the proceeds as against Patton & Co. under the agreements contained in the loan notes.

The actual arrival of the proceeds of the collection in the city of New York on May 6th does not in any way qualify the rights of the parties as fixed on the 5th day of May. In

33

the usual course of banking, and where it is not material to determine the exact moment of time when rights are fixed, it is quite true that the proceeds of a collection are not drawn against until the collecting bank is actually advised that the paper is paid, but this custom does not in any way affect the question we are considering.

Under the facts as they are presented by this record, the defendant bank, acting in good faith and without knowledge of plaintiff's alleged claim, acquired good title to the proceeds of the draft. (*Hatch* v. *Fourth Nat. Bank*, 147 N. Y. 184.)

The plaintiff made this result possible by indorsing the draft generally to Patton & Co. when ordinary prudence dictated that he should have indorsed it for collection.

The judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

All concur, except O'BRIEN and VANN, JJ., not voting.

Judgment reversed.