THE BANK OF AMERICA, Appellant, *v.* JOHN H. WAYDELL and WALTER J. BAGLEY, Respondents.

*Bank — rights of, in paper sent to it for collection — effect of a collateral note giving the bank a lien upon all property of the maker of the note in the possession of the bank — notice, in the case of paper deposited for collection, of the fact that the depositor was a mere agent for its collection — right to withdraw the paper — an indebtedness of the depositor to the bank does not make it a holder for value.*

Where persons in the business of banking and collecting send to their correspondents or agents, in the regular course of business of receiving and sending notes between them for collection for mutual account, business paper received from customers for collection, the agent or correspondent acquires no better title to it or to its proceeds than was owned by the one transmitting it unless there is a *bona fide* purchase of it for value or advances made upon it in good faith without notice of any defect in the title.

In an action brought by a bank upon a draft drawn by the firm of J. F. Hasty & Sons, payable to the order of A. Ives & Sons upon the defendants, who accepted the same, it appeared that the draft was delivered to Ives & Sons for the purpose of collection only; that Ives & Sons, for the purpose of having said draft collected, indorsed it and sent it to the bank inclosed in a letter addressed to the cashier of the bank, stating, " We enclose for collection and credit Waydell & Co. (the defendants) $1,500.   No protest for non-acceptance.                    Yours truly,                    A. IVES & SONS."

It further appeared that Ives & Sons had had a deposit account with the plaintiff bank for many years and that the words " We enclose for collection and credit," contained in the letter, meant that the proceeds of the draft were to be placed when collected to the credit of Ives & Sons.

It also appeared that before the draft became due Ives & Sons went into bankruptcy; that at this time Ives & Sons were indebted to the bank upon a note for $7,500, which contained a clause reciting that Ives & Sons "hereby give to the said bank a lien for the amount of all the liabilities aforesaid upon all the property or securities at any time given unto or left in the possession of the said bank by the undersigned, and also upon any balance of the deposit account of the undersigned with the said bank. * * * The undersigned do hereby further authorize the said bank at its option, at any time, to appropriate and apply to the payment of any of the said liabilities, whether now existing or hereafter contracted, any and all moneys now or hereafter in the hands of the said bank on deposit or otherwise, to the credit of or belonging to the undersigned, whether the said liabilities are then due or not due;" that after going into bankruptcy, and before the draft became due, Ives & Sons advised the plaintiff of the true state of affairs concerning the draft and demanded that the bank return the draft to them. The bank refused to do so, claiming that it was entitled to appropriate the proceeds of the draft in extinguishment of its claim against Ives & Sons.

*Held,* that the plaintiff was not entitled to recover on the draft;

That the legal effect of the transaction between Ives & Sons and the plaintiff was to make the latter the agent of the former for the purpose of collecting the draft;

That the notice which accompanied the draft established beyond question the authority and right under which the bank held the draft, *i. e.,* to collect the draft and credit the proceeds to the account of Ives & Sons;

That the bank having had notice that Ives & Sons were merely agents for the collection of the draft, its title was no better than that of Ives & Sons;

That J. F. Hasty & Sons were entitled at any time to revoke the plaintiff's authority to collect the draft, and that the refusal of the bank to comply with the demand made upon it by Ives & Sons for the return of the draft constituted a conversion thereof;

That the existence of the indebtedness upon the part of Ives & Sons did not constitute the plaintiff a holder of the draft for value under section 51 of the Negotiable Instruments Law.

APPEAL by the plaintiff, The Bank of America, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 30th day of October, 1903, upon the decision of the court, rendered after a trial before the court without a jury at the New York Trial Term, dismissing the plaintiff's complaint upon the merits.

*Eldon Bisbee,* for the appellant.

*Lemuel E. Quigg,* for the respondents.

HATCH, J.:

The complaint avers that upon the 11th day of August, 1900, at the city of Detroit in the State of Michigan, for value received, the firm of J. F. Hasty & Sons made their draft or bill of exchange, dated on that day, whereby they directed the defendants to pay to the order of A. Ives & Sons, sixty days after the date of said draft, the sum of $1,500, and to charge the same to the account of J. F. Hasty & Sons; that thereafter the said firm of A. Ives & Sons, for value received, indorsed the draft and delivered it to the plaintiff, who then became and now is the lawful owner and holder thereof; that the said draft was duly presented to the defendants herein for acceptance, and the defendants duly accepted the same by writing across the face thereof the following, "Accepted — payable at the New York Produce Exchange Bank — $1,500.00 — Due Oct. 10th, 1900 — Fifteen hundred dollars — No. 15," and signed said acceptance in their firm name of Waydell & Co.; that on the 10th day of October, 1900, the day the said draft became due, it was duly presented for payment and payment was refused, whereupon the same was duly protested for non-payment, of all of which presentment, demand, refusal, non-payment and protest the defendants had due notice. The complaint demanded judgment for the face of the draft, together with interest and protest fees. The defendants, by way of an affirmative defense, averred that the said draft was delivered to Ives & Sons for the purpose of collection only, and that Ives & Sons delivered it to the plaintiff without value and solely for the purpose of collecting the same; that the plaintiff never became the owner and holder thereof, and that the plaintiff was also notified before said draft became payable that Ives & Sons never were the owners and holders thereof, and that they held the said draft solely as agents of J. F. Hasty & Sons for the purpose of collection. Upon the trial it was conceded by the defendants that they accepted payment of the draft; that it was presented for payment at the place where payment was due and payment demanded and refused, and that the draft was duly protested. The defendants then proved that the draft was given to Ives & Sons for the purpose of collection only; that they paid nothing therefor and that for the purpose of having said draft collected Ives & Sons indorsed the same and sent it to this plaintiff inclosed

with the following letter addressed to plaintiff's cashier : " * * *
We enclose for collection and credit Waydell & Co., $1,500. No
protest for non-acceptance. Yours truly, A. Ives & Sons." It fur-
ther appeared that Ives & Sons had had a deposit account with the
plaintiff for many years and that the words " We enclose for col-
lection and credit " meant that when collected the proceeds of the
draft were to be placed to the credit of Ives & Sons. Before the
said draft became due and on the 10th day of September, 1900,
Ives & Sons went into bankruptcy. On the fourth day of Septem-
ber Ives & Sons were indebted to the plaintiff in the sum of $7,500
upon a collateral note given to secure a loan of $25,000, in which
note, among other things, Ives & Sons agreed and they " hereby
give to the said bank a lien for the amount of all the liabilities afore-
said, upon all the property or securities at any time given unto or
left in the possession of the said bank by the undersigned, and also
upon any balance of the deposit account of the undersigned with
the said bank. * * * The undersigned do hereby further
authorize the said bank at its option, at any time, to appropriate and
apply to the payment of any of the said liabilities, whether now
existing or hereafter contracted, any and all moneys now or here-
after in the hands of the said bank on deposit or otherwise, to the
credit of or belonging to the undersigned, whether the said liabili-
ties are then due or not due." Upon the 4th day of September,
1900, Ives & Sons had a credit balance in the plaintiff bank of
$1,767.75. The bank on that day credited the collateral note
account with the sum of $2,500 and charged the deposit account
with the same sum, thereby reducing the collateral note account to
$5,000 and creating an overdraft in the deposit account of $732.25.
The amount of this overdraft was increased thereafter, and on said
September 10, 1900, when Ives & Sons went into bankruptcy, it
amounted to $1,796.10. The credit upon the collateral note and
the charge to the deposit account were made without any direc-
tion from Ives & Sons. Before the draft became due, but after
the bankruptcy of Ives & Sons, Hasty & Sons and Ives & Sons
notified the plaintiff of the true state of affairs concerning the
draft, that it was delivered to Ives & Sons by Hasty & Sons for col-
lection and Ives & Sons demanded that the bank immediately return
the draft to them. Compliance with this demand by the bank was

refused, it claiming that under its agreement with Ives & Sons it had a right to hold and to appropriate the proceeds of the draft in extinguishment of its claim against Ives & Sons. By this action it is sought to enforce by legal remedy the claim thus asserted.

We deem it to be settled law that the legal effect of the transaction between Ives & Sons and the plaintiff was to make the latter the agent of the former for the purpose of the collection of this draft. The notice which accompanied the draft established beyond question the authority and right under which the bank held the draft. That was to collect and credit the account of Ives & Sons with the proceeds of the draft when collected. The bank was authorized to present the draft to the drawees for acceptance. Having done that act and procured the acceptance it could take no further steps save to collect the draft when due when it was authorized to credit the amount to Ives & Sons. In *Dickerson* v. *Wason* (47 N. Y. 439) the following rule was established : " Where persons in the business of banking and collecting send to their correspondents or agents, in the regular course of business of receiving and sending notes between them for collection for mutual account, business paper received from customers for collection, the agent or correspondent acquires no better title to it or to its proceeds than was owned by the one transmitting it, unless there is a *bona fide* purchase of it for value or advances made upon it in good faith, without notice of any defect in the title." This rule is precise in its application to this case. Ives & Sons were not holders of the draft for value, but were mere agents for its collection. It was received by the bank, accompanied by a notice of the character of the title of Ives & Sons, and the bank in express terms was directed to collect and credit it. The bank's title was not higher than the title of Ives & Sons and of such title the bank had notice as matter of fact, in consequence of which its rights and obligations were measured by the title which it acquired. The rule announced in the *Dicker son* case was reiterated and applied in *Bank of Clarke Co.* v. *Gilman* (81 Hun, 486) by the General Term of the Supreme Court in the first department, and the decision therein was affirmed by the Court of Appeals (152 N. Y. 634) on the opinion below. That was an action brought to recover the proceeds of a check drawn upon the National Bank of the Republic of New York city by

the plaintiff bank, located at Berryville in the State of Virginia. It was indorsed : " For collection and credit of Bank of Clarke County. J. R. Nunn, Cashier." It was sent by the plaintiff to J. J. Nicholson & Sons, bankers at Baltimore, without any special instructions or any previous agreement varying the legal effect of its indorsement. The latter indorsed it, " Collect for J. J. Nicholson & Sons " and sent it to the defendants. The latter, instead of presenting it for payment when received to the National Bank of the Republic, deposited it in the Manhattan Company and added the indorsement " For deposit in the Manhattan Company to credit of Gilman, Son & Company." The next day the Manhattan Company presented the check to the National Bank of the Republic. It was paid and charged to the account of the maker on January fifteenth. On January fourteenth J. J. Nicholson & Sons failed, and notice of the failure came to the defendants some time during the day. The plaintiff claimed to recover the proceeds of the check. The claim was upheld and a recovery permitted upon the ground that Gilman, Son & Co. obtained no title to the check or its proceeds ; that the indorsement upon the check was notice to all agents dealing with it of the purpose to be accomplished by it, to wit, the collection of the check and the remittance of the proceeds to the plaintiff ; that the defendants were not entitled to credit the proceeds based upon an indebtedness of J. J. Nicholson & Sons to them, even though they were indebted to them at the time when the check came to their hands. The court also held that the power of revocation continually existed in the owner of the check ; that he could follow it into any person's hands and recover the same or its proceeds as against any person, save he who was a *bona fide* purchaser for value or had made advances upon it in good faith without notice of any defect in the title. In principle that case is decisive of the present question. As we have seen, the bank had notice of the limitation of Ives & Sons' title, as it had notice that it was sent for collection and credit. The true owner of the draft was J. F. Hasty & Sons, and they had the right at any time prior to the collection of the money to revoke the authority to collect and demand a return of the draft. They exercised this right by demanding its return, and the refusal of the bank to comply with that demand operated in law as a conversion of the draft and subjected

them to an action therefor in the right of the true owner. It is claimed, however, by the appellant that two cases in the Court of Appeals announce a different doctrine. The first is *Hutchinson* v. *Manhattan Company* (150 N. Y. 250). Therein a draft was drawn by the Interstate Mortgage Trust Company of Greenfield, Mass., on the Packard National Bank of the same place, payable to the order of G. H. Kaulback. This draft was deposited with Patton & Co., a firm of brokers in the city of New York. When deposited it was indorsed: "Pay to the order of L. B. Hutchinson, G. H. Kaulback;" also "Pay W. L. Patton & Co., or order, L. B. Hutchinson." Patton & Co. deposited the draft with the Manhattan Company, adding the indorsement "For deposit to the credit of W. L. Patton & Co." In fact the draft was delivered by Hutchinson to Patton & Co. for collection only. At the time of the deposit of the draft by the latter with the Manhattan Company it had no notice that Patton & Co. had received the same for collection, nor did it have any other notice than such as the indorsement thereon conveyed. The defendant bank forwarded the draft on May fourth to Massachusetts for collection. It was collected on the fifth day of May and the proceeds remitted to the defendant bank, which received it on the next day. On the fifth of May Patton & Co., being insolvent, made a general assignment for the benefit of their creditors and filed it in the office of the clerk of the city and county of New York at three-sixteen o'clock of that afternoon. Patton & Co. were indebted to the defendant bank upon two promissory notes, and the bank by virtue of a contract, in all respects similar to the one held by the plaintiff in this case, acquired a lien upon all of the securities or money in its hands for the payment of such promissory notes. Hutchinson, who delivered the draft to Patton & Co., sought to recover its proceeds. His claim was defeated upon the ground that when the money was collected in Massachusetts, it was received for and on account of the defendant bank, and that as such collection was made prior to the assignment by Patton & Co. the bank was authorized to receive and apply the money upon its indebtedness; that Hutchinson having indorsed the draft generally and the bank having no notice that it was for purposes of collection, either from the indorsements contained upon it, or from any other source, it acquired title to the proceeds of the draft; that if Hutchinson desired to limit

the rights of Patton & Co. he should have made his indorsement express the restricted sense in which the draft was delivered, and not having done so he had no claim upon the bank for its proceeds. It is apparent from the discussion which was had in that case that had the defendant bank had notice of the limited character of Patton & Co.'s title, that it was delivered only for purposes of collection, the holding would have been in Hutchinson's favor. A clear distinction is made between such a case and the one which the court considered, and the effect of the decision is to bring it into harmony with the case of *Bank of Clarke Co.* v. *Gilman* (*supra*). The second case relied upon is that of *Hatch* v. *National Bank* (147 N. Y. 184). It is in principle the same, although its facts are somewhat different. Therein a firm of brokers had diverted certain securities which had been left with them upon deposit, pledging them for a loan. The lenders gave to the brokers a check which the brokers deposited with the defendant bank. The latter collected the same and deposited the proceeds thereof to the credit of the brokers. In an action brought by the owner of the securities to recover of the bank, it was held that they were not entitled to recover; that the check which was received and collected conveyed no notice of the transaction and that the bank was justified in receiving and acting upon its faith and credit the same as though it had been money brought by the brokers and deposited with it, and that this was so, even though the transaction could be traced. The court, however, in that case held that the owner might have followed and recovered the converted securities, or their avails, but as the bank had no notice or knowledge of the larceny of the securities, it was not chargeable with that wrongful act, but had the right to act upon the faith of the check. These cases are all in harmony. The holding proceeds upon the theory that there was no notice, either upon the paper itself or otherwise, of the limited character of the ownership of the property in making the indorsement and delivering the paper. In this case there was and this difference operates to protect the title of the true owner of the draft, in consequence of which the contract executed by Ives & Sons to the bank did not become operative upon this paper. It is not necessary that we refer to all of the cases upon this subject cited and relied upon by the learned counsel for the appellant; in all of

them where the right of the bank has been upheld to apply the proceeds it arose upon instruments due and payable upon presentation, in either checks or drafts which currently pass as evidence of money. Nothing appeared therein which put the party upon notice. In the main they were general indorsements, carrying perfect title, and no knowledge of the limited title of the person making the transfer was brought home to the party or bank receiving it. The transactions thus assumed the form of dealing with instruments payable upon presentation without notice of any limitation or defect in the title. Under such circumstances the courts have supported the transaction in favor of the party dealing upon the faith of the instrument, mainly upon the ground that it was essential to protect such right in order to give stability to business methods, as a necessary element of commercial law. But where the transfer is restricted and accompanied by actual notice before anything of value has been parted with, or right secured, the same law protects the true owner of the paper, and he may intervene at any time and enforce his rights therein. The existence of the indebtedness upon the part of A. Ives & Sons did not constitute the plaintiff a holder of the draft for value. It is conceded that such was the rule under the authority of *Coddington* v. *Bay* (20 Johns. 637). The claim, however, is now made that section 51 of the Negotiable Instruments Law (Laws of 1897, chap. 612) has changed the rule in this respect and that such indebtedness made the bank a holder of this draft for value. Upon such proposition this court has decided otherwise (*Sutherland* v. *Mead*, 80 App. Div. 103) and also the second department (*Roseman* v. *Mahony*, 86 id. 377). It is not needful that we extend the discussion of this subject beyond that contained in the cases to which reference is made. In the present case nothing was discharged, nor did the bank have the power to make use of the draft prior to. collection, either by crediting it to Ives & Sons or making application of it upon their indebtedness. The mere possession of it in their hands under this limited right could not constitute the indebtedness of Ives & Sons a valuable consideration so as to enable the bank to retain it as against the true owner. Until there is some discharge or dealing with the pre-existing indebtedness it cannot become a consideration for the retention or enforcement of

commercial paper as against the true owner. But entirely outside of the Negotiable Instruments Law it is apparent that under the general rules of commercial law the bank cannot in this instance be permitted to recover upon the paper as against the drawees of the draft, because all of the rights which it had as holder have been revoked by the owner of the draft. In no view of this case, therefore, is the plaintiff entitled to maintain this action.

The judgment should, therefore, be affirmed, with costs.

VAN BRUNT, P. J., INGRAHAM, McLAUGHLIN and LAUGHLIN, JJ., concurred.

Judgment affirmed, with costs.