**In re J. H. JACKSON CO., Inc.**

**Ex parte WHITON.**

Circuit Court of Appeals, Second Circuit. June 3, 1929.

No. 249.

Lesser Bros., of New York City (William Lesser and Rudolph J. Safarik, both of New York City, of counsel), for appellant.

Breed, Abbott & Morgan, of New York City (Gerald J. Craugh, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. J. H. Jackson Company, Inc., was adjudicated a bankrupt on August 5, 1926. Long prior to that time the Irving National Bank, to the rights of which American Exchange Irving Trust Company (hereinafter called the bank) succeeded by merger, received a "letter of hypothecation and general assurance" from J. H. Jackson Company, Inc., providing, among other things, as follows:

"In the absence of any special written agreement to the contrary, all drafts, checks, notes, and other evidences of indebtedness

and the proceeds thereof, and any and all bills of lading, warehouse receipts, and other documents, including the goods represented thereby and the proceeds thereof, and any and all other property of the undersigned, including deposit balances, now or hereafter received by the bank from or for the undersigned, whether for safe-keeping or otherwise, may be held by the bank as security for the payment and satisfaction of any and every debt, liability, or obligation, matured or unmatured, present or future, direct or contingent, of the undersigned to the bank, and the bank shall have a lien therefor on the same, and shall not be bound to account for or return any thereof, so long as the undersigned is under any liability to the bank, directly, indirectly or collaterally with others.

\* \* \*

"3. Whenever any draft accompanied by shipping documents, received by the bank from or for the undersigned, shall have been accepted, the bank, at its option and in its discretion, without notice to the undersigned, may hold the accompanying documents until payment of the relative draft, or may surrender them to the drawee, or may require and take a trust certificate, banker's guaranty or broker's undertaking as a condition to the surrender thereof."

Jackson Company was a general customer and depositor of the bank for many years, and under the "letter of hypothecation," on various dates between April 1, 1926, and August 1, 1926, received loans from the bank aggregating $64,569.40, which were secured by drafts drawn by Jackson Company to the order of itself on divers persons, aggregating a face amount of $80,156.34. Attached to each of these drafts were negotiable documents of title indorsed in blank, purporting to represent merchandise actually sold by the bankrupt to each of the drawees named in the drafts. The bank realized on the collateral that secured its advances the sum of $54,527.50, which left a balance of $10,041.90 due and unpaid.

On or about August 3, 1916, Jackson Company presented to the bank a draft drawn by it on the American Tanning Company, of Chicago, Ill., calling for payment of $2,412.58, 30 days after sight. Attached to this draft was a bill of lading purporting to represent a shipment of merchandise by the bankrupt to the American Tanning Company, of the value of $2,412.58. This draft was indorsed by Jackson Company in blank and delivered to the bank in the usual course of business for collection. Thereafter the bank caused the draft to be presented to the American Tanning Company in Chicago for acceptance, and this was accepted on August 11, payable September 10, 1926. Before the draft was paid a creditor of the Jackson Company brought action against the latter in the municipal court of Chicago to recover damages, on the ground that it had been induced by false representations to sell Jackson Company certain merchandise. In that action the creditor attached and garnisheed the draft, which was then in possession of a Chicago bank. The American Exchange Irving Trust Company intervened in the action and sought to have the attachment vacated, and the trustee in bankruptcy of Jackson Company also intervened and stipulated to have the payment of any amount collected made to the American Exchange Irving Trust Company without prejudice to the rights of the trustee. Thereupon the creditor and the trust company made a settlement of the Chicago proceeding whereby the net amount of $1,657.72 was paid by the Chicago bank to the trust company. Thereafter the latter company filed its petition with the referee in bankrutcy, praying that the said sum of $1,657.72 should be adjudged to belong to the bank free from any claim of the trustee in bankruptcy. The referee, after hearing the evidence, ordered that the bank retain the $1,657.72 as its own property, and the District Court on a petition to review affirmed the referee.

■■ The indorsement of the draft gave the bank no right of action against the drawee prior to acceptance. National Bank of Republic v. Millard, 10 Wall. 152, 19 L. Ed. 897; First National Bank v. Whitman, 94 U. S. 343, 24 L. Ed. 229; Hopkinson v. Forster, L. R. 19 Eq. 733. The letter of hypothecation created no right in the draft for $2,412.58 on the part of the bank prior to the adjudication in bankruptcy, because the draft had not at that time been accepted, and did not, until after acceptance, afford a cause of action against the American Tanning Company, on which it was drawn.

■■ But Jackson Company owed the bank a large balance on August 3, when it received the draft for collection and was handed with the draft a bill of lading representing the goods, which was to be surrendered on payment of the draft. The letter of hypothecation specifically covered bills of lading and pledged them to secure all obligations due the bank. Such an agreement was entirely valid, and affected all future transactions made between the bank and its depositor in reliance upon it. Hatch v. Fourth National Bank, 147 N. Y. 184, 41 N. E. 403; Hutchin-

son v. Manhattan Co., 150 N. Y. 250, 44 N. E. 775. The fact that the transfer of the bill of lading might by reason of the insolvency of Jackson Company operate as a preference in favor of an antecedent claim was quite immaterial, unless the bank had reasonable cause to believe, at the time the bill of lading was transferred, that such would be the effect. Bankruptcy Act § 60(b); 11 USCA § 96. No proof was offered showing that at that time the bank had reasonable cause to believe that Jackson Company was insolvent.

The goods represented by the bill of lading were subject to a vendor's lien on behalf of Jackson Company. This the bank held as security under its agreement of hypothecation. The adjudication in bankruptcy did not affect this lien, for it vested prior to the filing of the petition.

If the draft was not accepted, Jackson Company could either insist on its contract and retain its vendor's lien, or accept a repudiation by the buyer and resume title to the goods. In either event the bank would hold the bill of lading as security under the letter of hypothecation. If, as turned out to be the case, the draft was accepted, the bank had a right to hold the draft, which had then become a valid obligation of the American Tanning Company, and turn over the goods to that company on payment of the draft. The bank could obtain and hold the acceptance, and collect the draft, because it was given in exchange for its lien on the goods, which the bank obtained by the transfer of the bill of lading under the terms of the letter of hypothecation. The bank was authorized as collecting agent to surrender the bill of lading on payment of the draft, and to hold the proceeds as security, because they took the place of the goods, represented by the bill of lading, which it had received as security.

No matter what might happen, the moment the bank received a transfer of the bill of lading, it obtained an interest in the goods which vested prior to the filing of the petition in bankruptcy. As matters eventuated, it had as security a vendor's lien in succession to Jackson Company, which was surrendered on payment of the draft. By the payment it obtained the purchase moneys in place of the goods, and these moneys remained in its hands as security. The adjustment of the litigation with the attaching creditor left the bank with $1,657.72 applicable to the balance due it from Jackson Company, which the bill of lading had originally secured.

For the foregoing reasons, the order of the District Court is affirmed.