In the Matter of the Estate of Lucy Van Derpool, Deceased. Frank Van Derpool, as Administrator with the Will Annexed of Lucy Van Derpool, Deceased, Respondent; J. Spoor Hurst et al., as Executors of Margaretta H. Fryer, Deceased, Appellants.

Third Department, July 9, 1956.

*Francis H. Trombly* and *Edwin L. Fowler* for appellants.

*Bernard T. McGivern* for respondent.

GIBSON, J. In the year 1946 and thereafter, one Blessing, then an attorney and counselor at law, represented appellants' testatrix, Margaretta H. Fryer, in connection with her administration of the estate of Peter Ellsworth Fryer, deceased. There were in existence savings accounts in the name of Peter Ellsworth Fryer in trust for Margaretta H. Fryer, one in the Albany Savings Bank amounting to $5,621.94 and another in the National Savings Bank of the City of Albany in amount $5,316.20. The attorney converted to his own use the proceeds of both accounts. It may be inferred that Mrs. Fryer was ignorant of the conversion and that she was told that the accounts had been or were to be transferred to her sole name, as in July, 1953 the attorney wrote Mrs. Fryer with reference to signature cards for the accounts and in August, 1953 wrote her that the balance in the Albany Savings Bank had increased to $6,512.92 and that in the National Savings Bank to $6,035.55 and advised her that he would have the passbooks mailed to her directly from the banks.

On July 16, 1953 Blessing qualified as executor of the estate of Lucy Van Derpool, the respondent's testatrix. On August 13, 1953 as such executor, Blessing drew a check for $12,750 upon the account of that estate in the Mohawk National Bank of Schenectady, the check being payable to the order of himself as executor, which he used to purchase a cashier's check of the latter bank payable to his individual order. On August 17, 1953 he took the cashier's check to the National Savings Bank and with it opened an account in the amount of $6,035.55 in the name of Margaretta H. Fryer and obtained that savings bank's check to the order of the Albany Savings Bank for $6,512.92 and cash of $201.53. On the same day, he used the $6,512.92 check to open an account in that amount in the Albany Savings Bank in the name of Margaretta H. Fryer. On August 25, 1953 Mrs. Fryer withdrew a total of $2,548.47 from the two accounts, leaving in each a balance of $5,000, and deposited in the Citizens Trust Company of Schenectady $2,500 of the amounts withdrawn.

At the time of her death on April 24, 1954 there remained on deposit in the three accounts an aggregate amount in excess of $12,500.

This discovery proceeding was brought by the administrator with the will annexed of the estate of Lucy Van Derpool to compel delivery by the executors of the estate of Margaretta H. Fryer of the moneys deposited on August 13, 1953 to the credit of Mrs. Fryer in the two savings banks, amounting to $12,548.47 and concededly a portion of the $12,750 which Blessing had misappropriated from the Van Derpool estate. The proceeding terminated in a decree adjudging the amount of such deposits to be the property of the Van Derpool estate and directing payment thereof by the executors of the Fryer estate. From that decree this appeal was taken.

The Surrogate held that a constructive trust must be deemed to have been erected to avoid unjust enrichment of the Van Derpool estate and cited *Matter of Accles* (153 Misc. 421, affd. 245 App. Div. 743), in which Surrogate SLATER stated the general rule (pp. 422–423): '' It is a principle in equity that one from whom money has been obtained by misrepresentation, fraud and felony does not lose title thereto as against the wrongdoer. The money having been obtained by the decedent from the bank by fraud and felony, the bank could recover it from the decedent, if found in his possession, or follow it in the hands of any person who received it without consideration or with notice of the fraud by which it was obtained ''. However, in the case cited the funds which decedent had fraudulently obtained remained in *his* account where they were reached by the discovery proceeding.

We have concluded that the decree must be reversed. The case of *Nassau Bank* v. *National Bank of Newburgh* (159 N. Y. 456) seems to us in point and decisive of the questions here involved. There, one Taylor deposited in his account in the Nassau bank the proceeds of a New York draft upon which he had forged an indorsement. He thereupon drew against that account his check for $2,400 to the order of an estate and deposited the check to the account of the estate in the Newburgh bank, in restitution of his prior theft of $2,400 accomplished by means of a forged check paid from that account. The Nassau bank, after making good on the forged New York draft, sought to reclaim the $2,400 from the Newburgh bank and the estate. The complaint was dismissed. In affirming, the Court of Appeals, by Judge GRAY, said (pp. 459–460), '' The situation may be said to be, in certain aspects, new; but I see no good reason for

denying to it the application of the rule that when money has been received by a person in good faith, in the usual course of business and for a valuable consideration, it cannot be pursued into his hands by one from whom it has been obtained through the fraud of a third person. If it has been used, as it is claimed in the present case, to pay an indebtedness owing by the third person, with innocence in the recipient, there is a consideration for its payment by him, which, despite the fraud through which the money was obtained and for reasons based upon policy and the need for such security in ordinary commercial transactions, supports and protects its possession against the world."

The principle had previously been enunciated in *Stephens* v. *Board of Educ.* (79 N. Y. 183) and *Hatch* v. *Fourth Nat. Bank* (147 N. Y. 184) which seem, on the facts, to parallel the instant case, but the *Nassau Bank* case is perhaps more significant, and directly in point, as involving the thief's deposit of the stolen funds to the bank account of one whom he had previously defrauded.

Respondent's theories seem to coalesce in his basic tenet that Blessing delivered neither money nor a negotiable instrument to Mrs. Fryer but in effect assigned to her choses in action, which term he applies both to the savings accounts and to the passbooks which evidenced them. The facts of the transaction do not seem to us to support that legal conclusion. In the *Nassau Bank* case (*supra*), the creditor estate actually received a negotiable instrument, Taylor's check, through the agency of the bank which received and collected it and so, in our view, did each of the savings banks in this case. We conceive the legal situation to be that when each savings bank opened the account and credited the check, the check was out of Blessing's control and in the possession and control of the bank as Mrs. Fryer's agent to collect it and was thus delivered to Mrs. Fryer in satisfaction of the debt and at that time became free from any previous infirmity.

Respondent urges the distinction that in the *Nassau Bank* case (*supra*) the deposit was made to a pre-existing account over which the depositors had complete control, but that here the thief opened the accounts and the depositor had no dominion over them until she was notified of their existence and had received the passbooks. The pre-existence of the account in one case seems of little moment and any validity of the argument as to Mrs. Fryer's lack of dominion would obtain only until she received the passbooks, as she shortly did, whereupon she promptly made partial withdrawals which the Surrogate has traced into a third bank.

Respondent would further distinguish the *Nassau Bank* case (*supra*) on the ground that it involved no agency on the part of the thief and argues that here Blessing was Mrs. Fryer's agent. No such agency appears except as one existed, some time before, to transfer the original Totten trust accounts, which he instead converted, or as an agency might be implied from his acts in opening the new accounts. As to the latter supposed agency, his acts were directed, not to assisting Mrs. Fryer, but to concealing from her the fact of his prior thefts. Further, he was obviously not Mrs. Fryer's agent in misappropriating the Van Derpool estate funds and no notice of that transaction may be imputed to her. Assuming he may have been Mrs. Fryer's agent, without her knowledge, in opening the new accounts, that limited agency would not extend beyond the physical acts of his so doing, so as to charge her with notice as to his purely personal actions which preceded them or those arising out of the not unusual dual situation of an agent who is also a debtor of his principal.

Respondent argues that the savings banks were not holders in due course inasmuch as there were no withdrawals against the uncollected checks deposited, but, so far as appears, the estate account in the *Nassau Bank* case was in the same situation. However, whatever question may exist appears of no moment, as no claim is made against either bank, and the question becomes unimportant in any event in view of our conclusion that the effect of the transaction was the unrestricted delivery to Mrs. Fryer of negotiable instruments.

The decree should be reversed and the petition dismissed, with costs to appellants.

FOSTER, P. J. (dissenting). It seems anomalous to me that A can steal from B in order to pay a debt to C, and that where there are no substantial intervening equities that B cannot recover the proceeds from C. Of course, if the loot is in actual cash and cannot be identified, or there are intervening equities, there is reason for the rule. It seems ultratechnical, however, to say here that the loot became cash when it was deposited in savings banks. It is clearly identifiable by the pass books, and there are not intervening equities that I can see except possibly as to the sum withdrawn by the appellant and placed in another savings bank. If the appellant had drawn out the rest of the money and disbursed it, or even hidden it under the bed, the case would be different, and it might well be said that public security, public interest, etc., required the application of the rule invoked. But here all we have involved is which of

two innocent people must suffer. It seems to me that the appellant should take the loss for after all the deposits do not represent the money that was embezzled from her. She had already been bilked by the time the thief dipped his hands into another estate. True, she didn't know it but I fail to see how that should inure to her advantage. There is no choice that I can see in the trust reposed in the recreant attorney by both estates. The simple test should be: who owns the money?

BERGAN, COON and ZELLER, JJ., concur with GIBSON, J.; FOSTER, P. J., dissents and votes for affirmance, in a memorandum.

Decree reversed on the law and facts and petition dismissed, with costs to appellants.