[951 NE2d 369, 927 NYS2d 821]

COMMODITY FUTURES TRADING COMMISSION, Respondent, v STEPHEN WALSH et al., Defendants, and JANET WALSH, Appellant.

SECURITIES AND EXCHANGE COMMISSION, Respondent, v WG TRADING INVESTORS, L.P., et al., Defendants, and JANET WALSH, Appellant, et al., Relief Defendant.

Argued May 31, 2011; decided June 23, 2011

**POINTS OF COUNSEL**

*Law Offices of Steven L. Kessler*, New York City (*Steven L. Kessler* and *Eric M. Wagner* of counsel), for appellant. I. The first certified question should be answered in the affirmative under the facts of this case. (*Wildenstein & Co. v Wallis*, 79 NY2d 641; *Burns v Burns*, 84 NY2d 369; *Price v Price*, 69 NY2d 8; *Fields v Fields*, 15 NY3d 158; *DeJesus v DeJesus*, 90 NY2d 643; *Majauskas v Majauskas*, 61 NY2d 481; *Musso v Ostashko*, 468 F3d 99; *Rainbow v Swisher*, 72 NY2d 106; *Doe v Doe*, 29 Misc 3d 483; *Vandelli v Vandelli*, 266 AD2d 280.) II. The second certified question should be answered in the affirmative under the facts of this case. (*Halsey v Winant*, 258 NY 512, 287 US 620; *Joslin v Lopez*, 309 AD2d 837; *Matter of American Inv. Bank v Marine Midland Bank*, 191 AD2d 690; *United States v McCombs*, 30 F3d 310; *Marine Midland Bank v Murkoff*, 120 AD2d 122, 69 NY2d 875; *Southern Indus. v Jeremias*, 66 AD2d 178; *Federal Deposit Ins. Co. v Malin*, 802 F2d 12; *Marine Midland Bank-N.Y. v Batson*, 70 Misc 2d 8; *Orbach v Pappa*, 482 F Supp 117; *Safie v Safie*, 24 AD2d 502, 17 NY2d 601.)

*Nancy R. Doyle, Assistant General Counsel, Commodity Futures Trading Commission*, of the District of Columbia bar, admitted pro hac vice, *Dan M. Berkovitz*, Washington, D.C., and *Gloria P. Clement*, for Commodity Futures Trading Commission, respondent. I. "Marital property" within the meaning of Domestic Relations Law § 236 does not include the proceeds of fraud. (*Commodity Futures Trading Commn. v Kimberlynn Cr. Ranch, Inc.*, 276 F3d 187; *Sharp v Kosmalski*, 40 NY2d 119; *In re First Cent. Fin. Corp.*, 377 F3d 209; *Republic of Philippines v Marcos*, 806 F2d 344; *Securities & Exch. Commn. v Cavanagh*, 155 F3d 129; *Eberhard v Marcu*, 530 F3d 122; *Chicago Tit. & Trust Co. v Fox Theatres Corp.*, 69 F2d 60; *Securities & Exch. Commn. v Unifund SAL*, 910 F2d 1028; *Levi Strauss & Co. v Sunrise Intl. Trading Inc.*, 51 F3d 982; *Federal Trade Commn. v Southwest Sunsites, Inc.*, 665 F2d 711.) II. A spouse does not pay "fair consideration" according to the terms of Debtor and

Creditor Law § 272 when she relinquishes in good faith a claim to the proceeds of fraud. (*Butner v United States*, 440 US 48; *O'Brien v O'Brien*, 66 NY2d 576; *United States v Red Stripe, Inc.*, 792 F Supp 1338; *Matter of Shelly v Doe*, 249 AD2d 756; *Kasinski v Questel*, 99 AD2d 396; *Federal Deposit Ins. Co. v Malin*, 802 F2d 12; *HBE Leasing Corp. v Frank*, 61 F3d 1054.) III. This Court should not accept Ms. Schaberg's invitation to resolve in her favor unsupported or disputed factual assertions. (*In re Nortel Networks Corp. Sec. Litig.*, 539 F3d 129; *United States v Monsanto*, 924 F2d 1186; *Nickel v Bank of Am. Natl. Trust & Sav. Assn.*, 290 F3d 1134; *Matter of Rothko*, 43 NY2d 305; *Securities & Exch. Commn. v Better Life Club of Am., Inc.*, 995 F Supp 167; *Securities & Exch. Commn. v Infinity Group Co.*, 993 F Supp 324; *Securities & Exch. Commn. v Colello*, 139 F3d 674.)

*Allan A. Capute*, of the District of Columbia bar, admitted pro hac vice, *Mark Cahn*, Washington, D.C., *Anne K. Small* and *Jacob H. Stillman*, for Securities and Exchange Commission, respondent. I. Proceeds of fraud are not marital property within the meaning of Domestic Relations Law § 236. (*Solomon v Solomon*, 307 AD2d 558, 1 NY3d 546; *LaPaglia v LaPaglia*, 134 Misc 2d 1030; *McMerty v Herzog*, 702 F2d 127; *Wrightsman v Commissioner of Internal Revenue*, 111 F2d 227; *Eigenbrodt v Eigenbrodt*, 217 AD2d 752; *Matter of State of New York v Goldstein*, 170 AD2d 789; *Capasso v Capasso*, 129 AD2d 267; *Kohl v Kohl*, 24 AD3d 219; *SEC v Capital Gains Research Bureau, Inc.*, 375 US 180; *Rogers v Rogers*, 63 NY2d 582.) II. Under Debtor and Creditor Law § 272, a spouse does not pay "fair consideration"—which must be a "fair equivalent" value—when she relinquishes a claim to the proceeds of fraud, regardless of whether she does so in good faith. (*Lippe v Bairnco Corp.*, 249 F Supp 2d 357; *United States v Loftis*, 607 F3d 173; *BFP v Resolution Trust Corporation*, 511 US 531; *United States v Gleneagles Inv. Co., Inc.*, 565 F Supp 556; *United States v Tabor Ct. Realty Corp.*, 803 F2d 1288; *Federal Deposit Ins. Co. v Malin*, 802 F2d 12; *Safie v Safie*, 24 AD2d 502, 17 NY2d 601; *United States v Barrier Indus., Inc.*, 991 F Supp 678; *Century Ctr. v Davis*, 100 AD2d 564; *McMerty v Herzog*, 702 F2d 127.)

*Elliott Scheinberg*, Staten Island, *Nancy Kellman*, White Plains, *Allan Mayefsky*, New York City, *Michael Stutman* and *Aaron Weitz*, amici curiae. I. Janet Schaberg's three contentions fail individually and are also internally contradictory. II. Janet Schaberg's desperate interpretation that stolen property

becomes part of the marital estate corrupts principles of equity. III. The stolen monies never entered the marital estate. IV. Spousal agreements, as contracts, require lawful consideration: the Schaberg-Walsh agreement is void because neither was possessed of lawfully obtained assets, thereby voiding the agreement for want of consideration. (*Rainbow v Swisher*, 72 NY2d 106; *Matter of Boden v Boden*, 42 NY2d 210; *Village of Upper Nyack v Christian & Missionary Alliance*, 143 Misc 2d 414, 155 AD2d 530; *Sayres v Decker Auto. Co.*, 239 NY 73; *Sweinhart v Bamberger*, 166 Misc 256.) V. Janet Schaberg asserts that part of her consideration was her waiver of the right to seek additional equitable distribution: she could never have sought distribution of illicit assets. (*LaPaglia v LaPaglia*, 134 Misc 2d 1030.) VI. Spousal rights to property acquisition and distribution arise exclusively under the Domestic Relations Law and no other statutory scheme, such as the Debtor and Creditor Law. (*Hoops v Hoops*, 292 NY 428; *Pajak v Pajak*, 56 NY2d 394; *Matter of Seitz v Drogheo*, 21 NY2d 181; *Price v Price*, 69 NY2d 8; *Murphy v Murphy*, 56 Misc 2d 946; *Eccles v Hutchinson*, 28 Misc 2d 412; *Enthoven v Enthoven*, 167 Misc 686, 256 App Div 813; *Bowler v Bowler*, 46 Misc 2d 821; *Tuitt v Tuitt*, 36 Misc 2d 418.) VII. Janet Schaberg improperly seeks protection under the Debtor and Creditor Law. VIII. "Bona fide purchaser," under the Debtor and Creditor Law, focuses only on the transferee's intent. Janet Schaberg was also a transferor because she held dual possessory interests in the properties, both as joint owner and as partner in the marital estate, rendering her ineligible for transferee status. (*O'Brien v O'Brien*, 66 NY2d 576.) IX. Under the Debtor and Creditor Law, Janet Schaberg was a transferor who gave and received illicit consideration and could therefore not transfer the jointly held assets to herself and Stephen Walsh. (*In re Sharp Intl. Corp.*, 403 F3d 43; *Morse v Howard Park Corp.*, 50 Misc 2d 834; *Bankers Sec. Life Ins. Socy. v Shakerdge*, 49 NY2d 939.) X. The canons of statutory construction require that the first certified question be answered in the negative: the Domestic Relations Law does not deem proceeds of fraud marital property. (*Blickstein v Blickstein*, 99 AD2d 287; *Hasegawa v Hasegawa*, 290 AD2d 488; *Maharam v Maharam*, 245 AD2d 94.) XI. A matrimonial court could not have distributed the Walsh estate. (*Janke v Janke*, 47 AD2d 445, 39 NY2d 786.) XII. The Second Circuit misapplied *Price v Price* (69 NY2d 8 [1986]). XIII. The canons of statutory construction underscore extraordinary caution to avoid any construction which (1) is unjust to third parties, such

as creditors; (2) is unreasonable; (3) is absurd; or (4) creates hardships. (*People ex rel. United States Aluminium Print. Plate Co. v Knight,* 174 NY 475; *People v Equitable Trust Co. of New London, Conn.,* 96 NY 387; *People v Home Ins. Co.,* 92 NY 328.) XIV. New York, albeit by only a trial court, and other states reject property distribution of stolen assets to spouses not involved in the illegality; constructive trusts are imposed on such assets. (*Sharp v Kosmalski,* 40 NY2d 119; *Bankers Sec. Life Ins. Socy. v Shakerdge,* 49 NY2d 939; *Simonds v Simonds,* 45 NY2d 233; *LaPaglia v LaPaglia,* 134 Misc 2d 1030; *McMerty v Herzog,* 702 F2d 127.) XV. Janet Schaberg advances an absurd theory which was handily rejected by the First Department elsewhere. (*Litvak v Litvak,* 63 AD3d 691; *Fehring v Fehring,* 58 AD3d 1061; *Wiener v Wiener,* 57 AD3d 241; *LeRoy v LeRoy,* 274 AD2d 362.)

### OPINION OF THE COURT

GRAFFEO, J.

Stephen Walsh is a defendant in related actions brought by plaintiffs Commodity Futures Trading Commission and Securities and Exchange Commission (the Agencies) alleging violations of the anti-fraud provisions of the Commodity Exchange Act and the Securities Exchange Act. The Agencies claim that between 1996 and 2009, Walsh and his codefendant, Paul Greenwood, misappropriated more than $550 million from funds they managed for various public and private institutional investors.[1]

The Agencies also pursued disgorgement efforts against Janet Schaberg, the former spouse of Walsh, seeking to recover any proceeds she held of the fraud perpetuated by Walsh. Although there is no indication that she was aware of or participated in any wrongdoing related to her ex-husband's fraudulent scheme, the Agencies allege that a sizable amount of property derived from Walsh's illegal securities activities went into Schaberg's possession under the parties' separation agreement and divorce decree.

The United States Court of Appeals for the Second Circuit asks us two questions to assist it in discerning whether Schaberg has a legitimate claim to those funds, which would prevent the Agencies from obtaining disgorgement from her. These questions involve the interplay of the Domestic Relations Law and

---

1. Greenwood pleaded guilty to securities fraud charges in 2010. Walsh's criminal prosecution remains pending.

the Debtor and Creditor Law and implicate significant public policy considerations.

## Background

Walsh and Schaberg were married in 1982 and have two children. Over the course of their 25-year marriage, Walsh was a substantial shareholder in or a management partner of a number of successful business enterprises, such as Champion Sportswear and Tanger Malls/Prime Outlets. As a couple, they acquired a number of homes, including condominiums in Florida and New York City, and a house in Port Washington, New York. Schaberg did not have outside employment during the marriage, but she volunteered at a number of charitable organizations.

In 2004, Schaberg and Walsh separated and divorce proceedings were initiated in early 2005. They entered into a "Stipulation of Settlement and Agreement" in November 2006 pursuant to Domestic Relations Law § 236 (B) (3). Under the terms of the agreement, Schaberg conveyed her ownership interest in the Port Washington marital residence (with an alleged value of about $7.5 million) to Walsh and she received sole ownership of the condominiums in New York City and Florida (with an alleged value of approximately $6.7 million). The agreement also provided that Schaberg would retain nearly $5 million held in several checking accounts and Walsh waived all claims to such monies. Walsh further agreed to pay Schaberg a distributive award of $12.5 million, payable in biannual installment payments through 2020.[2] As part of the settlement, Schaberg further waived any claim for maintenance based on the parties' lengthy marriage and, except as otherwise provided in the agreement, relinquished her right "to a distributive award or an award of equitable distribution with respect to any property acquired by [Walsh] either before or during the marriage." In April 2007, the settlement agreement was incorporated, but not merged, into the parties' final judgment of divorce. Schaberg moved to Florida in 2007 and remarried a year later.

Nearly two years after entry of the judgment of divorce, the Agencies filed separate complaints in the United States District Court for the Southern District of New York alleging large-scale

---

**2.** Schaberg had received $3 million in installment payments when Walsh ceased making the payments in 2009 as a result of a restraining order imposed on his assets.

fraud by Walsh, Greenwood and various investment entities they controlled. Both complaints sought monetary penalties from the named defendants and disgorgement of ill-gotten gains from the defendants and relief defendants alike. Schaberg was named as a relief defendant, along with other parties believed to be in possession of proceeds from the fraudulent securities scheme.

The District Court granted the Agencies' requests for preliminary injunctions freezing six of Schaberg's brokerage and bank accounts containing approximately $7.6 million. The court also prohibited Schaberg from transferring any real property, jewelry or artwork without court approval, thereby effectively freezing the bulk of her assets. Schaberg appealed, arguing that the District Court erred in issuing the injunctions because the property targeted by the injunctions was not subject to disgorgement.

The Second Circuit recognized that federal district courts have the power to order disgorgement from a relief defendant upon a finding that the party "(1) is in possession of ill-gotten funds and (2) lacks a legitimate claim to those funds" (618 F3d 218, 225 [2d Cir 2010]). In this case, the Second Circuit has determined that the question as to whether the injunctions were properly issued turns on whether the District Court correctly found, as a matter of law, that Schaberg lacked a legitimate claim to the funds.[3] Acknowledging Schaberg's assertion that she has a valid claim to the funds because "she acquired her assets pursuant to the separation agreement she executed with Walsh in their divorce proceedings, and that by executing this agreement she became a good faith purchaser for value of the assets" (*id.* at 226), the court held that resolution of Schaberg's contention implicated open issues of New York law. The Second Circuit therefore certified the following two questions to us:

> "(1) Does 'marital property' within the meaning of New York Domestic Relations Law § 236 include the proceeds of fraud?
>
> "(2) Does a spouse pay 'fair consideration' according to the terms of New York Debtor and Creditor

---

**3.** The Second Circuit reserved judgment as to whether, under the first prong of the test, "some of her assets were purchased with funds that are not alleged to be the proceeds of fraud, and thereby would not be subject to disgorgement" (618 F3d at 226 n 4).

Law § 272 when she relinquishes in good faith a claim to the proceeds of fraud?" (*Id.* at 231-232.)

The Second Circuit also invited this Court to "reformulate these questions as it sees fit, or expand them to address any other issues of New York law pertinent to these appeals" (*id.* at 232).

## Marital Property

Schaberg asserts that she validly acquired certain assets pursuant to the settlement agreement, and that by entering into this agreement she became a good faith purchaser for value of the distributed property. The Agencies respond that monies derived from the securities fraud were not part of the marital estate in the first instance and, consequently, cannot be retained or transferred through equitable distribution of marital assets under Domestic Relations Law § 236. The parties' legal arguments raise difficult policy questions, requiring us to weigh the competing interests of the original owners of funds stolen in a fraudulent scheme against the innocent former spouse of the defrauder.

We begin with the language and purpose of Domestic Relations Law § 236, which codifies New York's Equitable Distribution Law. Under the terms of the statute, section 236 "contemplates only two classes of property: marital property and separate property" (*O'Brien v O'Brien*, 66 NY2d 576, 583 [1985]). Marital property is defined as "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held" (Domestic Relations Law § 236 [B] [1] [c]), and this broad definition "includes a wide range of tangible and intangible interests" (*Fields v Fields*, 15 NY3d 158, 162 [2010], *rearg denied* 15 NY3d 819 [2010] [internal quotation marks and citation omitted]). Separate property, in contrast, is narrowly limited to four discrete categories, none of which are applicable to this case.[4]

Domestic Relations Law § 236 requires that a trial court equitably distribute marital property between the parties upon the dissolution of the marriage, while separate property remains

---

4.  Specifically, separate property means:
    "(1) property acquired before marriage or property acquired by bequest, devise, or descent, or gift from a party other than the spouse;
    "(2) compensation for personal injuries;

with the original spousal owner (*see* Domestic Relations Law § 236 [B] [5]). In making its distributive determination, the court is to consider a variety of statutory factors, including the duration of the marriage, the age and health of the parties, the income of each party, the extent of any maintenance award, the probable future financial circumstances of each party, and the nontitled spouse's direct or indirect contributions to the marriage, including "services as a spouse, parent, wage earner and homemaker" (Domestic Relations Law § 236 [B] [5] [d]). New York's Equitable Distribution Law also permits the parties—as happened here—to contract out of the elaborate statutory scheme and instead agree to a division or distribution of property, provided financial disclosure and the statutory requirements for a valid separation agreement are satisfied (*see* Domestic Relations Law § 236 [B] [3]).

The Legislature adopted the Equitable Distribution Law in 1980 to replace the existing system of distribution, which had depended, in large measure, on the traditional common-law title theory of property. In recognition that marriage represents "an economic partnership to which both parties contribute as spouse, parent, wage earner or homemaker," the Equitable Distribution Law was designed on "an entirely new theory which considered all the circumstances of the case and of the respective parties to the marriage" (*O'Brien*, 66 NY2d at 585). The comprehensive regime

> "reflects an awareness that the economic success of the partnership depends not only upon the respective financial contributions of the partners, but also on a wide range of nonremunerated services to the joint enterprise, such as homemaking, raising children and providing the emotional and moral support necessary to sustain the other spouse in coping with the vicissitudes of life outside the home" (*Price v Price*, 69 NY2d 8, 14 [1986] [internal quotation marks and citations omitted]).

Consistent with this purpose, and implicit in the statutory framework as a whole, is the concept that "upon dissolution of

---

"(3) property acquired in exchange for or the increase in value of separate property, except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse;

"(4) property described as separate property by written agreement of the parties pursuant to subdivision three of this part" (Domestic Relations Law § 236 [B] [1] [d]).

the marriage there should be a winding up of the parties' economic affairs and a severance of their economic ties by an equitable distribution of the marital assets" (*O'Brien*, 66 NY2d at 585).

Against this legislative backdrop, we must decide whether the dictates of Domestic Relations Law § 236 and the purposes of equitable distribution permit the transfer of marital assets to a recipient spouse who is unaware that some or all of those assets were illegally acquired by the other spouse. The statute expansively defines marital property to encompass "all property acquired" by either spouse during the course of the marriage and there is a presumption that "all property, unless clearly separate, is deemed marital property" (*Fields*, 15 NY3d at 163 [internal quotation marks and citation omitted]). Furthermore, the term "acquired" does not require that property be segregated by its methods of acquisition; it merely means that a person gains possession (*see* Black's Law Dictionary 26 [9th ed 2009]). Given that we have repeatedly held that the scope of marital property is to be "construed broadly" (*see e.g. Mesholam v Mesholam*, 11 NY3d 24, 28 [2008] [internal quotation marks and citation omitted]), we conclude that the proceeds of fraud can constitute marital property as defined in Domestic Relations Law § 236 and answer the first certified question in the affirmative. It is therefore possible under the Domestic Relations Law to transfer assets derived from fraud to an innocent and unknowing spouse in a divorce proceeding.

Nevertheless, the Agencies argue that, putting aside the language of Domestic Relations Law § 236 and focusing on public policy considerations favoring the return of stolen property to its rightful owner, we should carve out an exception to the broad definition of marital property for the proceeds of fraud. They suggest that where, as here, it is alleged that the property transferred in a divorce proceeding was itself derived from stolen funds, a court should not reach the issue of fair consideration (the topic of the Second Circuit's second certified question) because it is simply irrelevant whether fair consideration was given. In their view, the original owner—a victim of embezzlement and not a mere creditor—should have an absolute right to seek disgorgement of the previously distributed property from the transferee-spouse. Although these contentions have appeal, we are unable to agree.

It has long been the law of this State that "money obtained by fraud or felony cannot be followed by the true owner into the

hands of one who has received it *bona fide* and for a valuable consideration in due course of business" (*Stephens v Board of Educ. of Brooklyn*, 79 NY 183, 186 [1879]). This principle is premised on the recognition that, in contrast to chattels, "money has no earmark" and "cannot be identified" (*Hatch v Fourth Natl. Bank of City of N.Y.*, 147 NY 184, 192 [1895]).[5] At its core, our rule favoring innocent transferees of stolen funds over defrauded owners is rooted in New York's "concern for finality in business transactions" (*Banque Worms v BankAmerica Intl.*, 77 NY2d 362, 372 [1991]). We have explained that

> "to permit in every case of the payment of a debt an inquiry as to the source from which the debtor derived the money, and a recovery if shown to have been dishonestly acquired, would disorganize all business operations and entail an amount of risk and uncertainty which no enterprise could bear" (*id.* [internal quotation marks and citation omitted]).

Similar concerns are relevant in the matrimonial realm. Exspouses have a reasonable expectation that, once their marriage has been dissolved and their property divided, they will be free to move on with their lives. To hold that the proceeds of fraud acquired by one spouse unbeknownst to the other cannot be subject to equitable distribution or conveyed through a settlement agreement as marital property would undermine one of the fundamental policies underlying the equitable distribution process, namely finality. The exception proposed by the Agencies would effectively undo court orders and settlement agreements for an indeterminate time after the "winding up of the parties' economic affairs" (*O'Brien*, 66 NY2d at 585), and "subvert the policy of upholding settled domestic relations . . . in divorce cases" (*Rainbow v Swisher*, 72 NY2d 106, 111 [1988]; *see also Boronow v Boronow*, 71 NY2d 284, 290-291 [1988]).

Moreover, as a practical matter, where the innocent spouse and matrimonial court are unaware of the tainted nature of particular assets, distribution of marital assets under Domestic Relations Law § 236 (or pursuant to an opt-out settlement agreement) would become unworkable, particularly where the illegal activity of one spouse is not revealed for a number of

---

**5.** By comparison, an owner may seek recovery of identifiable stolen property, such as a piece of artwork, from an innocent good faith purchaser for value (*see Solomon R. Guggenheim Found. v Lubell*, 77 NY2d 311, 317 [1991]).

years subsequent to the divorce, as occurred in this case.[6] Analogizing to the rule articulated in *Stephens* and *Hatch* in the business setting, we conclude that monies obtained by fraud cannot be followed by the original owner into the hands of an innocent former spouse who now holds them (or assets derived from them) as a result of a divorce proceeding where that spouse in good faith and without knowledge of the fraud gave fair consideration for the transferred property. That being said, whether Schaberg acted in good faith and paid fair consideration for the tainted property that came into her possession pursuant to the settlement agreement is another matter and is at the heart of the Second Circuit's second question, to which we now turn.

Fair Consideration

Schaberg contends that the District Court erred in holding, as a matter of law, that she lacked a legitimate claim to the frozen funds. She argues that she provided fair consideration in exchange for the allegedly fraudulent proceeds and thereby became a good faith purchaser for value through her execution of an arm's length separation agreement. She also claims that there is no evidence that she had knowledge of her ex-husband's illegal conduct, particularly since he had a history of being a successful entrepreneur and securities trader, nor did she engage in collusion in the divorce proceeding to deprive the defrauded parties recovery of their investments. The Agencies counter that, as a matter of law, Schaberg could not have given fair consideration because, in exchange for acquiring assets that were later determined to be derived from fraud, she only gave up a claim to a larger portion of the marital estate, which also consisted of Walsh's proceeds of fraud and, as such, her consideration was illusory. Again, both parties raise compelling arguments.

Debtor and Creditor Law § 278 provides that a creditor whose claim has matured may have a fraudulent conveyance set aside "against any person" other than a good faith purchaser for value, defined as "a purchaser for fair consideration without

---

**6.** Of course, an entirely different situation is presented if it is known that both spouses participated in or were aware of the fraud or illegal conduct. In such cases, courts have held that it would be contrary to public policy to encourage "illegal activity by making an equitable distribution of the fruits of a criminal enterprise" (*LaPaglia v LaPaglia*, 134 Misc 2d 1030, 1032 [Sup Ct, Kings County 1987]).

knowledge of the fraud" (Debtor and Creditor Law § 278 [1]). Fair consideration is given for property "[w]hen in exchange for such property, . . . as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied" (Debtor and Creditor Law § 272 [a]). It is well settled that an evaluation of whether fair consideration is given for property under Debtor and Creditor Law § 272 must "be determined upon the facts and circumstances of each particular case" (*Halsey v Winant*, 258 NY 512, 523 [1932]).[7]

In assessing whether a spouse pays fair consideration within the meaning of Debtor and Creditor Law § 272 in connection with a property distribution made pursuant to a separation agreement incorporated into a judgment of divorce, a court must examine a number of factors. Since consideration cannot be predicated on a spouse's relinquishment of a claim to a greater share of the proceeds of fraud, the first step is to determine whether the spouse relinquished rights to other untainted assets in the marital estate. Clearly, this would constitute fair consideration.

Second, a court needs to look beyond the tangible marital property at issue because New York recognizes other forms of legitimate consideration, including nonmonetary consideration. For example, New York courts have found fair consideration where a spouse releases a claim for maintenance (*see Federal Deposit Ins. Co. v Malin*, 802 F2d 12, 20 [2d Cir 1986]; *In re Fair*, 142 BR 628, 631 [ED NY 1992]; *Darling v Darling*, 22 Misc 3d 343, 358 [Sup Ct, Kings County 2008]) or where consideration is predicated on "legally cognizable aspects of [the transferor's] child support obligation" (*see First Fed. Sav. & Loan Assn. of Rochester v Kasmer*, 140 AD2d 826, 828 [3d Dept 1988]). Similarly, the waiver of inheritance rights and the relinquishment of other "rights and remedies otherwise conferred by law" are also relevant to the determination of fair consideration (*Marine Midland Bank-N.Y. v Batson*, 70 Misc 2d 8, 10 [Sup Ct, Nassau County 1972]). It is also possible that child custody or visitation concessions could be viewed as a

---

7. Here, as the Second Circuit noted, "it is essentially undisputed that Schaberg had no notice that the money she received in her divorce was derived from fraud" (618 F3d at 229 n 8), and "there is no reason to question Schaberg's good faith" (*id.* at 230) in her execution of the settlement agreement. Hence, the only relevant element of Debtor and Creditor Law § 272 is whether she gave "fair consideration" for the allegedly tainted assets she received through the parties' property settlement.

valuable form of consideration. Indeed, based on the myriad types of consideration that arise in the unique context of marital dissolution, courts have repeatedly stated that "transfers made pursuant to a valid separation agreement incorporated into a divorce decree are presumed to have been made for fair consideration" (*Durand v Ackerman*, 2010 WL 3834587, \*7, 2010 US Dist LEXIS 101755, \*21 [ED NY 2010]; *see also In re Cersosimo*, 2009 WL 3182989, \*4, 2009 Bankr LEXIS 2009, \*13-14 [ED NY 2009]; *Darling*, 22 Misc 3d at 358-359).

In certifying the second question to us, the Second Circuit implicitly presumed that the only consideration Schaberg could have given in exchange for the tainted property she received was her release of a claim to other proceeds of the fraud—if that is the case, her claim would be illusory. Despite Schaberg's claim to the contrary, we must accept for purposes of answering this question the Second Circuit's assumption that the marital estate here "consisted almost entirely of the proceeds of fraud" (618 F3d at 230). Yet, as we've discussed, there are other valid forms of consideration that are relevant to the determination of fair consideration, even where the bulk of a marital estate consists of ill-gotten gains. We therefore reformulate the second question to read as follows: "Is a determination that a spouse paid 'fair consideration' according to the terms of New York Debtor and Creditor Law § 272 precluded, as a matter of law, where part or all of the marital estate consists of the proceeds of fraud?" As reformulated, and under our analysis, we answer this question in the negative.

Of course, the ultimate determination as to whether Schaberg gave fair consideration pursuant to Debtor and Creditor Law § 272 under the facts and circumstances of this case is a matter for the federal courts to resolve. But we note, on this limited record, that Schaberg contends that she surrendered more than her right to claim through equitable distribution a greater portion of fraudulently obtained funds constituting the marital estate. She alleges that she waived a claim for maintenance under Domestic Relations Law § 236 (B) (6), the calculation of which is based on a variety of considerations, including the length of the marriage; she released her right to inherit from Walsh's estate; and she dispensed with her interest in the multi-million-dollar marital residence located in Port Washington,

which she claims was not acquired with moneys derived from Walsh's fraudulent activities.[8] Furthermore, even where a spouse does not relinquish a "fair equivalent" for the aggregate of assets, it is possible that fair consideration may be exchanged for at least some of the assets (*cf. Corporation of Lloyd's v Funk*, 246 AD2d 570, 572 [2d Dept 1998], *lv dismissed* 91 NY2d 1002 [1998]).

In sum, we are not unsympathetic to the interests of parties who were fraudulently deprived of their investments and who, understandably, seek the return of a portion of their stolen monies. Most definitely, the victims of fraud are entitled to pursue disgorgement where it is demonstrated that the transferee-spouse was aware of or participated in the fraud or otherwise failed to act in good faith. One example of bad faith would be where the parties entered into a collusive divorce arrangement designed to conceal stolen money from its rightful owner. And even where the recipient executed a settlement agreement in good faith and without knowledge of the source of the ill-gotten gains, the defrauded parties may still recover if the spouse did not give fair consideration for the property under Debtor and Creditor Law § 272. But we believe that an innocent spouse who received possession of tainted property in good faith and gave fair consideration for it should prevail over the claims of the original owner or owners consistent with this State's strong public policy of ensuring finality in divorce proceedings.[9]

Accordingly, the first certified question and, as reformulated, the second certified question should be answered in accordance with this opinion.

---

**8.** In particular, Schaberg asserts that the Port Washington property was purchased in 1999 with funds derived from the sale of their previous marital residence, which in turn had been bought with legitimate funds in the early 1980s, long before Walsh's allegedly fraudulent conduct took place. Notably, Walsh was apparently permitted to sell the Port Washington home and use a portion of the untainted proceeds from that sale to pay legal fees incurred in connection with his criminal prosecution (*see Commodity Futures Trading Commn. v Walsh*, 2010 WL 882875, *3, 2010 US Dist LEXIS 21992, *9 [SD NY 2010]).

**9.** The Agencies suggest that disgorgement should be allowed because, upon turning the funds over to them, Schaberg could move to vacate the settlement agreement in state court on fraud grounds and seek a redistribution of any untainted assets Walsh may have received. But such an exercise would likely be fruitless, particularly where it appears that, years after the property division, Walsh liquidated the only purportedly "clean" asset he owned—the Port Washington house.

PIGOTT, J. (dissenting in part). I agree with the majority's analysis and conclusion relative to the first certified question. I also agree with much of what the majority says in its discussion of the second question, but find its reformulation of that question unnecessary. The Second Circuit posed a narrowly tailored question that is relatively simple to answer, namely, "Does a spouse pay 'fair consideration' according to the terms of New York Debtor and Creditor Law § 272 when she relinquishes in good faith a claim to the proceeds of fraud?" (*Commodity Futures Trading Commn. v Walsh*, 618 F3d 218, 231-232 [2d Cir 2010].) I would answer that question in the negative.

Debtor and Creditor Law § 278 states that a creditor with a matured claim may have a conveyance set aside against anyone "except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase" (Debtor and Creditor Law § 278 [1] [a]). "Fair consideration is given for property, or obligation, . . . [w]hen in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied" (Debtor and Creditor Law § 272 [a]).

The second certified question posed by the Second Circuit assumes that almost all of the proceeds in the marital estate consisted of the proceeds of fraud, the position taken by the Commodity Futures Trading Commission and the Securities and Exchange Commission (*see* 618 F3d at 230 [noting that "in her separation from Walsh, Schaberg relinquished future claims to an equitable distribution of marital property that—it is alleged—consisted almost entirely of the proceeds of fraud"]). The Second Circuit also notes that "there is no reason to question Schaberg's good faith in relinquishing her claim to what she believed was a legitimate interest in a substantial fortune" (*id.* at 230). Taking these facts into account, the question is, assuming that the marital estate consists almost entirely of the proceeds of fraud, does an "innocent spouse" like Schaberg, by virtue of relinquishing future claims to those proceeds, pay fair consideration? The answer is, of course, "no," as the majority essentially acknowledges: "consideration cannot be predicated on a spouse's relinquishment of a claim to a greater share of the proceeds of fraud" (majority op at 175).

Schaberg's forbearance from " 'seek[ing] through court proceedings or otherwise a distributive award or an award of equitable distribution with respect to' any other property acquired by [Walsh] over the course of their marriage" (*Walsh*,

618 F3d at 229) does not constitute "fair consideration" where, as the Second Circuit has asked us to assume here, the Walsh proceeds were obtained as the result of fraud. One cannot reasonably argue that a spouse—even an innocent one with no knowledge of her husband's fraud—could be said to have given "fair equivalent" value by giving up future claims to the equitable distribution of proceeds in which she has no legitimate interest. In such a case, the innocent spouse "has not given value for the misappropriated property, but rather has gained an interest in the property simply by virtue of being married to the person who misappropriated" it (*see generally In re Marriage of Allen*, 724 P2d 651, 659 [Colo 1986] [citing cases]). Accordingly, I would answer the second certified question in the negative.

Chief Judge LIPPMAN and Judges CIPARICK, READ and JONES concur with Judge GRAFFEO; Judge PIGOTT dissents in part in a separate opinion in which Judge SMITH concurs.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of the Rules of the Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in accordance with the opinion herein.