09-3742-cv, 09-3787-cv
Commodity Futures Trading Commission v. Walsh, et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: May 28, 2010
Questions Certified: August 13, 2010
Certified Questions Answered: June 23, 2011
Decided: September 15, 2011)

Docket Nos. 09-3742-cv, 09-3787-cv

(Consolidated for disposition)

COMMODITY FUTURES TRADING COMMISSION,

*Plaintiff-Appellee,*

— v.—

STEPHEN WALSH, PAUL GREENWOOD, WESTRIDGE CAPITAL
MANAGEMENT, INC., WG TRADING INVESTORS, L.P., WGIA, L.L.C., WESTRIDGE
CAPITAL MANAGEMENT ENHANCEMENT FUNDS, WG TRADING COMPANY L.P., WGI
L.L.C., K&L INVESTMENTS,

*Defendants,*

JANET WALSH,

*Relief Defendant-Appellant.*

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

— v.—

WG TRADING INVESTORS, L.P., WG TRADING COMPANY, LIMITED
PARTNERSHIP, WESTRIDGE CAPITAL MANAGEMENT, INC., PAUL GREENWOOD,
STEPHEN WALSH,

*Defendants,*

ROBIN GREENWOOD,

*Relief Defendant,*

JANET WALSH,

*Relief Defendant-Appellant.*

_____

B e f o r e:

RAGGI, LYNCH, and WALLACE, *Circuit Judges.*[*]

_____

Relief defendant-appellant Janet Schaberg appeals from a memorandum decision

and orders of the United States District Court for the Southern District of New York

(George B. Daniels, *Judge*) granting preliminary injunctions freezing certain of

Schaberg's assets. In response to our certified questions, see CFTC v. Walsh, 618 F.3d

218, 231-32 (2d Cir. 2010), the New York Court of Appeals held that (a) "proceeds of

fraud can constitute marital property," and (b) when "part or all of the marital estate

consists of the proceeds of fraud," that fact does not, as a matter of law, preclude "a

---

[*] The Honorable J. Clifford Wallace, United States Court of Appeals for the Ninth
Circuit, sitting by designation.

determination that a spouse paid 'fair consideration' according to the terms of New York Debtor and Creditor Law § 272." CFTC v. Walsh, 17 N.Y.3d 162, 172, 176 (2011) (internal quotation marks omitted). Because those rulings undermine the key legal assumptions supporting the preliminary injunctions, we vacate those orders, without prejudice to further proceedings applying the legal principles pronounced by the New York Court of Appeals.

VACATED and REMANDED.

_____

Steven L. Kessler (Eric M. Wagner, *on the brief*), Law Offices of Steven L. Kessler, New York, NY, *for Relief Defendant-Appellant Janet Walsh.*

Nancy R. Doyle, Assistant General Counsel (Jonathan L. Marcus, Deputy General Counsel, *on the brief*), *for* Dan M. Berkovitz, General Counsel, Commodity Futures Trading Commission, Washington, D.C., *for Plaintiff-Appellee Commodity Futures Trading Commission*.

Allan A. Capute (Anne K. Small, Deputy General Counsel, and Jacob H. Stillman, Solicitor, *on the brief*), *for* Mark D. Cahn, General Counsel, Securities and Exchange Commission, Washington, D.C., *for Plaintiff-Appellee Securities and Exchange Commission.*

_____

PER CURIAM:

This case, which arises out of the attempts of two federal agencies to disgorge funds from Janet Schaberg,[1] the ex-wife of alleged Ponzi-scheme artist Stephen Walsh, see CFTC v. Walsh, 618 F.3d 218 (2d Cir. 2010) ("Walsh I"), returns to us following

_____

[1] As reflected in the caption, Schaberg was sued by the agencies under the name Janet Walsh.

3

certification of questions to the New York Court of Appeals. The district court granted preliminary injunctions to the Commodity Futures Trading Commission (the "CFTC") and the Securities and Exchange Commission (the "SEC") (together, the "agencies"), freezing the bulk of Schaberg's assets. Schaberg appealed. On our first review of the case, we certified two questions to the New York Court of Appeals. Id. at 231-32. The Court of Appeals answered one question in Schaberg's favor and, reframing the other, answered it in a way that allows but does not require the conclusion that Schaberg may be found to have taken assets in connection with her divorce as a bona fide purchaser for value, in whole or in part. CFTC v. Walsh, 17 N.Y.3d 162 (2011) ("Walsh II"). Although that court's answers do not definitively resolve whether Schaberg's assets will prove subject to disgorgement, they do resolve this appeal. We conclude that Walsh II undermines the legal foundations of the district court's preliminary-injunction orders, which must therefore be vacated. We leave it to the district court to determine whether, if the agencies renew their applications, the agencies may restrain some or all of the same assets consistent with the principles of New York law set forth in Walsh II.

Janet Schaberg was married to Stephen Walsh for more than two decades. By the time of their separation in 2004, Walsh had amassed a substantial fortune and the two negotiated a settlement that gave Schaberg a not-insubstantial fortune of her own. Under that settlement, finalized in 2006, Walsh agreed to pay Schaberg 12.5 million dollars in biannual installments through 2020 and to allow Schaberg to keep nearly 5 million dollars held in several checking accounts during the marriage. Schaberg conveyed to Walsh her

4

interest in a house in Port Washington, New York, while Schaberg assumed sole ownership of condominiums in New York City and in Florida. Both parties waived their rights to any further equitable distribution, maintenance, or inheritance. In 2008, Schaberg remarried and adopted her current name.

In 2009, the CFTC and the SEC accused Walsh of operating a Ponzi scheme through which he and a partner fleeced investors of as much as 554 million dollars. Walsh, the agencies claimed, had convinced investors to deposit money into an entity that, although purportedly a pass-through vehicle for investing in an "equity index arbitrage" fund, Walsh actually used extensively for his own personal expenses.

The agencies sued not only Walsh but Schaberg. They did not allege that she herself committed or even had knowledge of any wrongdoing, only that she nevertheless possessed the proceeds of that wrongdoing – transferred directly to her from the investment entity in question – and should have to disgorge those proceeds to pay the defrauded investors. Pending resolution of the matter, the agencies sought and received a series of orders restraining Schaberg's funds, including the preliminary injunctions at issue here, which leave Schaberg "without access to the vast majority of her assets." Walsh I, 618 F.3d at 222-23.

On Schaberg's interlocutory appeal from the preliminary-injunction orders, we recognized that the agencies may obtain disgorgement of ill-gotten funds only to the extent that a relief defendant like Schaberg lacks a legitimate claim to them. See id. at 225, citing SEC v. Cavanaugh, 155 F.3d 129, 136 (2d Cir. 1998). We held that if

5

Schaberg "received her assets only when they were transferred to her pursuant to the separation agreement and if she is a good faith purchaser for value, then her assets are immune from disgorgement." Walsh I, 618 F.3d at 226. Looking to New York state law, we found a dearth of precedent on these matters and therefore certified two questions to the New York Court of Appeals:

> (1)    Does "marital property" within the meaning of New York Domestic Relations Law § 236 include the proceeds of fraud?
> (2)    Does a spouse pay "fair consideration" according to the terms of New York Debtor and Creditor Law § 272 when she relinquishes in good faith a claim to the proceeds of fraud?

Id. at 231-32.

On the first question, the Court of Appeals ruled unambiguously and unanimously for Schaberg, holding that "proceeds of fraud can constitute marital property" and that "monies obtained by fraud cannot be followed by the original owner into the hands of an innocent former spouse who now holds them (or assets derived from them) as a result of a divorce proceeding where that spouse in good faith and without knowledge of the fraud gave fair consideration for the transferred property." Walsh II, 17 N.Y.3d at 172, 174. It follows that the putative fraud proceeds that came into Schaberg's possession during the marriage were part of the marital estate subject to division upon divorce, and that Schaberg's ability to retain the funds, and the fraud victims' ability to retrieve them, turn on whether Schaberg qualifies as a bona fide purchaser for value given the terms of the separation agreement and divorce decree.

On the second question, the Court of Appeals reached a more complicated

6

conclusion. On the one hand, it held that "consideration cannot be predicated on a spouse's relinquishment of a claim to a greater share of the proceeds of fraud." Id. at 175. Thus, as the agencies contend, if the marital estate consisted entirely or almost entirely of the proceeds of fraud, Schaberg cannot be regarded as a bona fide purchaser for value simply because the share of the proceeds she received in the divorce represented a compromise in which she agreed in exchange to abandon claims to an even greater share. On the other hand, however, the court noted that "courts have repeatedly stated that transfers made pursuant to a valid separation agreement incorporated into a divorce decree are presumed to have been made for fair consideration," and listed several potential sources of consideration, including relinquishing rights of maintenance, inheritance, child custody, or visitation. Id. at 175-76 (internal quotation marks omitted). The Court of Appeals therefore rephrased the question to read:

> Is a determination that a spouse paid "fair consideration"
> according to the terms of New York Debtor and Creditor Law
> § 272 precluded, as a matter of law, where all or part of the
> marital estate consists of the proceeds of fraud?

Id. at 176. The Court answered the reformulated question in the negative. Two judges dissented in part, arguing that Schaberg could not have rendered fair consideration "by giving up future claims to the equitable distribution of [fraudulent] proceeds in which she has no legitimate interest." Id. at 179 (Pigott, J., dissenting in part).

The decision of the Court of Appeals, although not resolving every potential future question in this case, requires that we vacate the orders of the district court. We review the district court's preliminary injunctions for abuse of discretion, which may be found

7

when that court "proceeds on the basis of an erroneous view of the applicable law." Walsh I, 618 F.3d at 225 (internal quotation marks omitted). Here, the district court rested its grant of relief to the agencies on an erroneous view of the first of two issues we identified in Walsh I. Specifically, the district court rejected Schaberg's argument that a divorce decree could "cleanse the taint of fraudulent proceeds previously transferred to a spouse prior to" dissolution of the marriage.[1] The Court of Appeals has now held, to the contrary, that a divorce decree may cleanse such a taint, at least where the innocent spouse acts in good faith and gives fair consideration. Thus, in light of Walsh II, it is now clear that the district court's holding was erroneous.

The agencies, seeking to avoid vacation of the preliminary-injunction orders, turn their sights to the second issue we discussed in Walsh I, the issue of fair consideration, arguing in effect that we should affirm the preliminary injunctions on an alternative ground. Cf. NXIVM Corp. v. Ross Inst., 364 F.3d 471, 476 (2d Cir. 2004) (when reviewing a preliminary injunction, we may "affirm on any ground supported by the record"). They emphasize Walsh II's conclusion that "consideration cannot be predicated on a spouse's relinquishment of a claim to a greater share of the proceeds of fraud," 17 N.Y.3d at 175, and argue that the entire marital estate consisted of ill-gotten gains.

---

[1] The closest the district court came to reaching the second issue was to state that "Schaberg does not contend that she gave any consideration in exchange for a share of the allegedly fraudulently obtained funds at issue." If this comment is taken as describing Schaberg's posture on the good-faith-purchaser issue, it is untrue, because Schaberg did argue that she gave fair consideration. If this comment merely points out that Schaberg did not pay the victims of the fraud, that is true but irrelevant.

Schaberg, however, points to the court's further gloss that there is a presumption in favor of fair consideration in this context. See id. at 176. She also notes that the agencies' position comes close to that of the Walsh II dissenters, while the Court of Appeals majority went out of its way to point out that, depending on the facts, fair consideration can nevertheless be found in various aspects of a separation agreement or divorce decree.

Whatever the eventual resolution of this dispute, it is clear that we cannot affirm for lack of fair consideration based on the present record. First, the Court of Appeals answered squarely in the negative the very question the agencies would have us answer affirmatively: whether a finding that a divorced spouse paid "fair consideration," and is therefore a bona fide purchaser for value, is "precluded, as a matter of law, where part or all of the marital estate consists of the proceeds of fraud." Id. at 176. It held that a presumption of fair consideration applies in assessing divorce settlements, emphasized the potential importance of intangible forms of consideration, and concluded that the mere fact that the vast bulk of the assets possessed by the couple were the proceeds of fraud did not necessarily undermine the presumption in this case. See id. at 175-76. These aspects of the court's opinion militate strongly against affirming the district court – an outcome that clearly would have followed had the dissenters prevailed.

Second, it appears that at least some portion of the funds spent on the Port Washington property may have been untainted, so that Schaberg's relinquishment of her interest in that property could constitute substantial (if not necessarily sufficient)

9

consideration.[2]

Third, while rights to maintenance and inheritance from Walsh might not have been worth much at the time of the divorce, given that Walsh's (legitimate) net worth appears to have been negative, they may well, like out-of-the-money options, have had some value. There is some possibility, however remote, that Walsh might someday rebuild a legitimate fortune, to a portion of which Schaberg would have been entitled had she not divorced him. Whatever the value of that right, it is not zero, and Schaberg provided some consideration (though perhaps not much) when she relinquished that right.

Fourth, the Court of Appeals made clear that "even where a spouse does not relinquish a 'fair equivalent' for the aggregate of assets, it is possible that fair consideration may be exchanged for at least some of the assets." Id. at 177. The consideration Schaberg gave might have been a fair equivalent to a portion of the assets she received under the separation agreement, even if not to the entire amount. Thus, even if the various forms of consideration to which Schaberg points would be insufficient to render her a bona fide purchaser with respect to *all* of what she received in the divorce, it may be sufficient to qualify her as a bona fide purchaser with respect to some *portion* of those assets.

We therefore cannot affirm the district court's orders on the grounds suggested by the agencies.[3]

---

[2] Contrary to the CFTC's suggestion, Schaberg did raise this point below.

[3] The agencies also argue that, regardless of the outcome under state law, federal law should control because of the federal interests at stake. We concluded in Walsh I,

10

We express no view on how the district court should resolve the matter of "fair consideration" should the agencies renew their applications for injunctive relief against Schaberg. That will depend on an assessment of a number of fact-intensive issues, including the ones we raise here and possibly others. See id. at 175-76. We merely conclude that, in light of the rulings of the New York Court of Appeals on the certified questions, the district court's orders enjoining Schaberg's access to her assets can no longer stand.

For these reasons, we VACATE the district court's orders converting its temporary restraining order into a preliminary injunction and its order elaborating the preliminary injunction, without prejudice to any renewed application by the agencies to restrain some or all of the assets in question, and we REMAND to that court for further proceedings consistent with this opinion.

---

however, that "if Schaberg truly is a good faith purchaser for value of the assets in her possession – *a question of New York state law* – her assets would not be subject to disgorgement in a proceeding against her former husband." 618 F.3d at 226-27 (emphasis added) (citation omitted). We adhere to that conclusion, which in any event is now the law of the case.