## COMMODITY FUTURES TRADING COMMISSION, Plaintiff,

v.

### Stephen WALSH, et al., Defendants.

### and

Westridge Capital Management Enhancement Funds, Inc., WG Trading Company, LP, WGI LLC, K & L Investments, and Janet Walsh, Relief Defendants.

### Securities and Exchange Commission, Plaintiff,

### WG Trading Investors, L.P., et al., Defendants.

### and

### Robin Greenwood and Janet Walsh, Relief Defendants.

### Nos. 09–CV–1749 (GBD), 09–CV–1750 (GBD).

United States District Court, S.D. New York.

Signed Feb. 28, 2014.

■■■■■■■■■■■■■■■■■■■■■■■■

---

Jonmarc P. Buffa, Peter Martin Haas, U.S. Commodity Futures Trading Commission, Paul G. Hayeck, Washington, DC, Joseph Rosenberg, U.S. Commodity Futures Trading Commission, New York, NY, for Commodity Futures Trading Commission.

Christopher Patrick O'Connell, Parker, Milliken, Clark, O'Hara & Samuelian, Los Angeles, CA, for Westridge Capital Management, Inc.

James A. Clarkson, Paul G. Gizzi, Thomas Peter Smith, Joseph Patrick Dever, Jr., New York, NY, for Securities and Exchange Commission.

Justin M. Sher, Sher Tremonte LLP, New York, NY, for Stephen Walsh.

Steven L. Kessler, Eric Wagner, Law Offices of Steven L. Kessler, New York, NY, for Janet Walsh Schaberg.

Daniel Seth Ruzumna, Patterson, Belknap, Webb & Tyler LLP, Leonard Matthew Braman, New York City Law Department, New York, NY, for Robin Greenwood.

## MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, District Judge:

The Commodity Futures Trading Commission ("CFTC") and the Securities Exchange Commission ("SEC") brought a securities enforcement action seeking disgorgement of funds from Janet Schaberg (sued herein as a 'relief defendant' under her prior married name, Janet Walsh), ex-wife of alleged Ponzi-schemer Stephen Walsh. This Court entered *ex parte* restraining orders freezing the bulk of Schaberg's assets and subsequently converted those orders to preliminary injunctions, prohibiting Schaberg from transferring, disposing of or otherwise encumbering any of her assets without prior approval of the Court. Schaberg appealed and the Second Circuit certified to the New York State Court of Appeals the questions of whether the proceeds of fraud can constitute marital property and whether relinquishing a claim to the proceeds of fraud constitutes fair consideration. The New York State Court of Appeals ruled that the proceeds of fraud can constitute marital property. With respect to the second question, it ruled that a determination that a spouse paid fair consideration is not precluded where all or part of the marital estate consists of the proceeds of fraud. The Second Circuit then vacated the preliminary injunction of this Court and remanded the matter for further proceedings to determine

whether Schaberg provided fair consideration. After extensive discovery on the issue, Schaberg filed for summary judgment dismissing the agencies' claims against her. Schaberg's motion for summary judgment is GRANTED.

## BACKGROUND

Schaberg was married to Walsh for over two decades. When they separated in 2004, Walsh and Schaberg negotiated a settlement, finalized in 2006, under which Walsh agreed to pay Schaberg 12.5 million dollars in biannual installments through 2020 and to allow Schaberg to keep nearly 5 million dollars held in several checking accounts during the marriage. Schaberg conveyed to Walsh her interest in a house in Port Washington, New York while she assumed sole ownership of condominiums in New York City and Florida. Both parties waived their rights to any further equitable distribution, maintenance or inheritance. *CFTC v. Walsh*, 658 F.3d 194, 196 (2d Cir.2011) (*"Walsh III"*). In 2009, the CFTC and the SEC commenced an action against Walsh, alleging that he operated a Ponzi scheme through which he and a partner swindled approximately $554 million dollars from investors.

On appeal from this Court's preliminary injunction order, the Second Circuit certified the following questions to the New York State Court of Appeals: (1) Does "marital property" within the meaning of New York Domestic Relations Law § 236 include the proceeds of fraud? (2) Does a spouse pay "fair consideration" according to the terms of New York Debtor and Creditor Law § 272 when she relinquishes in good faith a claim to the proceeds of fraud? *CFTC v. Walsh*, 618 F.3d 218, 226 (2d Cir.2010) (*"Walsh I"*). The New York State Court of Appeals held that "proceeds of fraud can constitute marital property," and that "monies obtained by fraud cannot

be followed by the original owner into the hands of an innocent former spouse who now holds them (or assets derived from them) as a result of a divorce proceeding where that spouse in good faith and without knowledge of the fraud gave fair consideration for the transferred property." *CFTC v. Walsh*, 17 N.Y.3d 162, 172, 927 N.Y.S.2d 821, 951 N.E.2d 369 (2011) (*"Walsh II"*). Based on this ruling, the Second Circuit found that "the putative fraud proceeds that came into Schaberg's possession during the marriage were part of the marital estate subject to division upon divorce and that Schaberg's ability to retain the funds, and the fraud victims' ability to retrieve them, turn on whether Schaberg qualifies as a bona fide purchaser for value given the terms of the separation agreement and divorce decree." *Walsh III*, 658 F.3d at 197.

The New York State Court of Appeals had noted that "courts have repeatedly stated that transfers made pursuant to a valid separation agreement incorporated into a divorce decree are presumed to have been made for fair consideration," and the Court recognized that potential forms of consideration could include relinquishing rights of maintenance and inheritance. *Walsh II*, 17 N.Y.3d at 175–76, 927 N.Y.S.2d 821, 951 N.E.2d 369. The Court of Appeals thus held that a divorce decree may cleanse the taint of fraudulent proceeds previously transferred to an innocent spouse prior to the dissolution of the marriage where that spouse acts in good faith and gives fair consideration. On this basis, the Second Circuit found that it could not affirm this Court's preliminary injunction freezing Schaberg's assets based on the existing record. *Walsh III*, 658 F.3d at 199.

In seeking summary judgment, Schaberg argues that she received the Property in good faith and for fair consideration

and thus she has a "legitimate claim" to the Property as a matter of law. Specifically, Schaberg argues that in exchange for the funds and assets she received, she both conveyed property (the marital residence in Port Washington valued at $7.5 million at the time of the settlement) and discharged antecedent debt (by waiving a claim for maintenance, releasing her right to inherit from Walsh's estate and dispensing with her interest in the Port Washington residence). Schaberg argues that her divorce constituted both an equitable distribution of marital assets and an exchange for fair equivalent value. In particular, Schaberg points to the appellate decisions' finding that the property settlement was presumptively fair, as well as to the various forms of consideration she provided, including intangible and non-monetary consideration arising from services and support she provided to the Walsh family during the course of their marriage. Finally, Schaberg points to the appellate decisions' finding that good faith is not at issue here.

The agencies oppose Schaberg's motion, arguing that: (i) knowledge of the information that was or should have been obtained by Schaberg's agents, attorneys and accountants, who were retained for the divorce proceedings, is imputed to her; (ii) there is evidence that Schaberg did not act in good faith because she failed to inquire into the "extremely suspicious circumstances surrounding Walsh's finances"; and (iii) Schaberg failed to provide fair and sufficient consideration. The agencies' arguments focus primarily on the third point. Specifically, the agencies allege that: (a) the consideration that Schaberg provided was grossly disproportionate to the amount of funds and assets she received in the property settlement agreement; (b) Schaberg "received the lion's share of the valuable tangible assets, real property and nearly all of the Walshes' cash and cash-equivalent assets"; (c) Schaberg knew, either actually or by imputation, the extent of Walsh's indebtedness and yet obtained a release from any obligation to repay any of it; (d) Schaberg "got cash and assets with real value that were acquired with the proceeds of Walsh's massive fraud" while Walsh "got illiquid and worthless assets"; and (e) there was no fair equivalency when "Schaberg received or was promised to receive approximately eighty-five (85) percent of the marital assets in the Property Settlement Agreement ($43.7 million) while Walsh received only approximately fifteen (15) percent ($8 million)." (SEC's and CFTC's Opp. Brief at 10–24).

## I.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir.1981). Although a court will "construe the evidence in the light most favorable to the non-moving party, drawing all inferences in that party's favor," *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir.2005), where the non-moving party has the ultimate burden of proof, "the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the non-moving party's claim." *Kwon v. Yun*, 606 F.Supp.2d 344, 355 (S.D.N.Y. 2009) (quoting *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995) (internal quotations omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. 2548)). "In response to

a motion for summary judgment, the non-moving party must present "significant probative evidence" that a genuine dispute as to a material fact exists." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir.2007) (non-movant "must offer some hard evidence showing that its version of the events is not wholly fanciful"). The burden on the party opposing the motion is particularly heavy where there is already a presumption in favor of the movant. *U.S. Bank, N.A. v. Squadron VCD, LLC,* 504 Fed.Appx. 30 (2d Cir.2012) ("conclusory allegations, without more, cannot overcome [a] presumption ...").

Here, the Second Circuit's prior ruling provides a presumption in favor of Ms. Schaberg. Specifically, the Second Circuit held that "transfers made pursuant to a valid separation agreement incorporated into a divorce decree are presumed to have been made for fair consideration." *Walsh III,* 658 F.3d at 196 ("a presumption of fair consideration applies in assessing divorce settlements"); *Walsh II,* 17 N.Y.3d at 175, 927 N.Y.S.2d at 829, 951 N.E.2d 369 (citing *Durand v. Ackerman,* 2010 WL 3834587 at *7 (E.D.N.Y.2010); *In re Cersosimo,* 2009 WL 3182989 at *4 (E.D.N.Y.2009); *Darling v. Darling,* 22 Misc.3d 343, 358–59, 869 N.Y.S.2d 307 (Sup.Ct. Kings County 2008)). The Second Circuit further found that, on the record before it, there is nothing in the terms of the Property Settlement, the divorce process, the history of the Walsh marriage or any other part of the record to challenge Ms. Schaberg's status as a *bona fide* purchaser for value of the Property. *Walsh III,* 658 F.3d at 199 ("it is clear that we cannot affirm for lack of fair consideration based on the present record").

Thus, to survive summary judgment, the Agencies were required to adduce "signifi-cant probative evidence" to rebut the pre-sumption of fair consideration that has al-ready been held to exist in Ms. Schaberg's favor. The Agencies have failed to do so. Moreover, Ms. Schaberg has demonstrated the continuing absence of evidence suffi-cient to rebut the presumption of fair con-sideration in her favor.

## II. The Elements of "Fair Consideration" under DCL § 272 are Met

■ "[T]here are three elements to 'fair consideration' under the D.C.L.: first, the [transferee] must either convey property or discharge an antecedent debt in ex-change; second, the exchange must be for a fair equivalent; and third, the exchange must be 'in good faith.'" *In re Sharp Intern. Corp.,* 302 B.R. 760, 779 (E.D.N.Y. 2003) (citing *HBE Leasing Corp. v. Frank,* 61 F.3d 1054, 1058–59 (2d Cir.1995)), *aff'd,* 403 F.3d 43 (2d Cir.2005). Schaberg has met all three elements.

### A. Property Conveyed or Antecedent Debt Satisfied

■ There is no material question of fact that Ms. Schaberg conveyed property and discharged antecedent debts within the meaning of DCL § 272 in connection with her Property Settlement and divorce. Specifically, Ms. Schaberg conveyed the marital residence in Port Washington val-ued at $7.5 million at the time of the Property Settlement and "waived a claim for maintenance under [DRL] § 236(B)(6) ... she released her right to inherit from Walsh's estate; and she dispensed with her interest in the multimillion-dollar resi-dence located in Port Washington...." *Walsh II,* 17 N.Y.3d at 176, 927 N.Y.S.2d at 830, 951 N.E.2d 369.

### B. Exchange of Fair Equivalent Value

■ The Agencies have failed to meet their burden of showing a lack of fair

equivalent value in connection with the property settlement and divorce. The agencies argue that Schaberg did not provide fair equivalent value because she received roughly 85 percent of the assets in the Property Settlement Agreement. (SEC and CFTC Opp. Brief at 19). Specifically, the agencies point to the $43.7 million that Schaberg was promised to receive in the Property Settlement Agreement versus Walsh's $8 million. (*Id.* at 20).[1] Furthermore, the agencies allege that the division of assets was skewed in Schaberg's favor because she would keep "nearly all of the Walshs' cash and near-cash assets" while Walsh would take illiquid businesses and the Walshs would divide the real estate, which is unencumbered; the only tangible asset that Schaberg relinquished was the Sands Point home, which the agencies argue is worth only $2 million; and the only corporate assets exchanged in the divorce were the WG Entities, and not the various other companies that Schaberg cites. (*Id.* at 21). The agencies also question the value of the "non-monetary services" that Schaberg claims she provided during the course of the marriage. (*Id.* at 22).

However, the New York Court of Appeals "ruled unambiguously and unanimously for [Ms.] Schaberg ... that 'proceeds of fraud can constitute marital property' ... [i]t follows that the putative fraud proceeds that came into [Ms.] Schaberg's possession during the marriage were part of the marital estate subject to division upon divorce...." *Walsh III*, 658 F.3d at 197. The Second Circuit then examined the property settlement—which consisted of the real property component, the sale of business interests component and the distributive award component—and found it to be presumptively fair. *Walsh III*, 658 F.3d at 196; *Walsh II*, 17 N.Y.3d at 168, 927 N.Y.S.2d at 824, 951 N.E.2d 369; *Walsh I*, 618 F.3d at 222.

The real property component shows fair equivalence: Ms. Schaberg gave up title to the family home in Port Washington, appraised at $7.5 million, in exchange for an apartment in New York and a condominium in Florida, which together were valued at about $6.7 million. The sale of business interests component also shows fair equivalence, as it provides that Ms. Schaberg and Mr. Walsh would split equally the net profits from any sale or liquidation of the businesses listed in the Property Settlement. Finally, the distributive award component—which provided for semiannual payments to Ms. Schaberg totaling $1 million per year for 10 years, followed by semiannual payments totaling $500,000 per year for five years, for a projected total value of $12.5 million—shows fair equivalence. In exchange for Mr. Walsh retaining control over his businesses, he agreed that Ms. Schaberg would retain approximately $5 million in savings and investment accounts held in her name throughout the marriage. Moreover, provisions in the Property Settlement wherein "both parties waived their rights to any further equitable distribution, maintenance, or inheritance," support a finding of fair equivalence because they worked to the disadvantage of Ms. Schaberg as the non-earning spouse. *Walsh III*, 658 F.3d at 196; *Walsh I*, 618 F.3d at 222; Proper-

---

1. Ms. Schaberg's calculations of assets and intangibles show that she received $38,778,091 while Mr. Walsh received $59,012,990 under the terms of the Property Settlement Agreement. Ms. Schaberg argues that these calculations show the intent of the parties for the tangible marital property to be divided roughly equally, while the distributive award would be a means of compensating Ms. Schaberg for her legal interest of only half of all the marital property, including Mr. Walsh's business interests.

ty Settlement § 4.3 (Husband's waiver); *id.* § 4.4 (Wife's waiver).

Finally, an assessment of fair value in the context of a divorce must take into account the "myriad types of consideration that arise in the unique context of marital dissolution," including the bedrock principles of equitable distribution recognizing marriage as "an economic partnership to which both parties contribute as spouse, parent, wage earner or homemaker...." *Walsh II,* 17 N.Y.3d at 171, 176, 927 N.Y.S.2d at 826, 829, 951 N.E.2d 369 (citations omitted); *see Walsh III,* 658 F.3d at 199 (New York State Court of Appeals "emphasized the potential importance of intangible forms of consideration"); *Walsh II,* 17 N.Y.3d at 170, 927 N.Y.S.2d at 825, 951 N.E.2d 369 ('marital property' under DRL § 236 "includes a wide range of tangible and intangible interests"). Fair equivalence does not require a dollar-for-dollar exchange. Here, the numerous forms of intangible and non-monetary consideration arising from the multitude of services and support that Ms. Schaberg provided to the Walsh family during the 23 years preceding their separation support a finding of fair equivalence. Specifically, Ms. Schaberg raised the children, supervised home renovations, managed the family's finances and relinquished a lucrative career. Thus, the facts of this case do not raise a material question of fact regarding fair consideration.

### C. Good Faith

The Agencies have also failed to meet the substantial burden of demonstrating a lack of good faith on the part of Schaberg:

'A person seeking to set aside a conveyance upon the basis of lack of good faith must prove that one or more of the following factors is lacking: (1) an honest belief in the propriety of the activities in question; (2) no intent to take

unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others....' In short, 'the lack of good faith imports a failure to deal honestly, fairly and openly.' *In re Allou Dists., Inc.,* 446 B.R. 32, 63 (2011) (quoting *Ostashko v. Ostashko,* 2002 WL 32068357, at *22 (E.D.N.Y. Dec. 12, 2002) (quoting *Southern Indus., Inc. v. Jeremias,* 66 A.D.2d 178, 411 N.Y.S.2d 945 (2d Dep't 1978) (internal citations and quotations omitted)), *aff'd,* 79 Fed.Appx. 492 (2d Cir.2003)). As the Second Circuit pointed out, the Agencies' "did not allege that [Schaberg] herself committed or even had knowledge of any wrongdoing." *Walsh III,* 658 F.3d at 197.

The SEC and CFTC argue that "there is significant record evidence upon which a trier of fact could reasonably conclude that Schaberg had actual, constructive, or imputed knowledge of facts that disqualify her from good faith status." (SEC's and CFTC's Opp. Br. at 12). They contend that Schaberg's divorce attorneys were put on inquiry notice that Mr. Walsh had no legitimate source of income, and they had sufficient information that raised a duty to investigate further into Walsh's net worth. The agencies argue that as the attorneys' principal, Schaberg should be imputed with knowledge of the material facts that would have been discovered had her attorneys inquired.

In support of their claim that Schaberg did not act in good faith, the agencies point to Schaberg's "disquieting knowledge regarding the irregular and suspect nature of Mr. Walsh's finances [which] is imputed to Schaberg and disqualifies her as a bona fide purchaser because she lacked bona fides and failed to make the requisite inquiry into these irregularities." (SEC's and CFTC's Opp. Br. at 12). In particular, the agencies allege that Schaberg had

a duty to inquire because during the course of the divorce negotiations, she obtained "substantial information indicating that Mr. Walsh had no legitimate source of income, was heavily indebted, and had an indeterminate net worth." *Id.* The agencies point to the forensic accountants' skepticism over how the Walshes "magically" lived on over $2 million per year; Walsh's characterization of "virtually all of the funds that the couple lived on for years as 'loans' from WGTI, a corporate entity that [...] managed and held custodial investor funds"; and documentation provided by Walsh that detailed numerous direct transfers from the same WGTI account to the personal accounts of Walsh and Schaberg, "totaling over an additional $7 million dollars for the 2004–2005 time period." *Id.*

The Court of Appeals found that Schaberg entered into a valid separation agreement incorporated into a legitimate divorce under New York law. *See U.S. v. Walsh,* 712 F.3d 119, 122 n. 2 (2d Cir.2013) (" '[A]s a practical matter, where the innocent spouse and matrimonial court are unaware of the tainted nature of particular assets, distribution of marital assets under [DRL] § 236 (or pursuant to an optout settlement agreement) would become unworkable, particularly where the illegal activity of one spouse is not revealed for a number of years subsequent to the divorce, as occurred in this case' ") (quoting *Walsh II,* 17 N.Y.3d at 173–74, 927 N.Y.S.2d at 828, 951 N.E.2d 369). There is no evidence of a lack of good faith on Schaberg's part. Neither she nor anyone on her behalf demonstrated a failure to deal honestly, fairly and openly. Furthermore, the facts in this case overwhelmingly demonstrate that there is no evidence of collusion here. The agencies' inquiry or imputed knowledge argument fail to demonstrate a lack of good faith. As the Second Circuit noted, the agencies did not allege that Schaberg herself committed or had actual knowledge of any wrongdoing. Rather, Plaintiffs' allegations are based solely on Schaberg's unknowing possession of the proceeds of Walsh's wrongdoing. *CFTC v. Walsh,* 658 F.3d 194, 197 (2d Cir.2011).

The 23–year marriage between Walsh and Schaberg, the two-year-long negotiations evidencing a vigorously contested division of marital assets in connection with the Walsh divorce, the extensive terms of the Property Settlement and the highly contested divorce proceeding indicate that this was a real marriage that ended in a real divorce. Finally, the record is clear that Schaberg is not retaining the bulk of the investors' funds. As of the Receiver's Second Distribution, the investors had recovered almost 89% of their net principal investments (approximately $855 million). (Receiver's Mem. of Points and Authorities in Support of Mot. for Order Approving Third Distribution on Allowed Investor Claims, ECF 693). An additional $50 million would be disbursed pursuant to the Third Distribution, returning approximately 94.3% of the investors' net principal investments. (*Id.*).

The facts of this case compel this Court to uphold "this State's strong public policy of ensuring finality in divorce proceedings." *Walsh II,* 17 N.Y.3d at 177, 927 N.Y.S.2d at 830, 951 N.E.2d 369. Notably, the revelation of alleged fraud by Walsh did not come until three years after the Property Settlement was finalized, during which time Schaberg moved to Florida and married anew.

There is no question of fact as to any of the elements of fair consideration under DCL § 272. Accordingly, Schaberg is entitled to summary judgment dismissing the Agencies's relief defendant claims against her as a matter of law.

## CONCLUSION

Defendants' motions for summary judgment are GRANTED.

SO ORDERED.